## LAU LEE et al. v. UNITED STATES.

### No. 6645.

Circuit Court of Appeals, Ninth Circuit.

Oct. 16, 1933.

Fred Patterson, of Honolulu, T. H., and Herbert Chamberlin, of San Francisco, Cal., for appellants.

Sanford B. D. Wood, U. S. Atty., and Willson Carr Moore, Asst. U. S. Atty., both of Honolulu, T. H., and H. H. McPike, U. S. Atty., of San Francisco, Cal.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Appellants were convicted on two counts of an indictment filed in the District Court of the United States for the Territory of Hawaii. The first count charged that the appellants conspired with certain other defendants named in the indictment to import smoking opium and opium prepared for smoking in violation of section 174, title 21, USCA. The second count charged that the defendants imported from Hongkong into the United States 22,251 ounces of smoking opium and opium prepared for smoking.

The bill of exceptions is contained in the transcript from pages 118 to 233, inclusive. It does not purport to contain all the evidence or all the instructions. The attorneys for the government quote evidence from the "transcript of testimony" taken at the trial, which is not before us, and incorporate the same in their brief by quotation and also by reference. The matters thus referred to are not a part of the record which can be considered by us on appeal, and we are at a loss to understand why counsel have indulged in this course of action. The transcript in this

case incorporates many matters which are not included in the bill of exceptions and are not properly a part of the record. We refer to matters appearing between pages 15 and 118 of the printed transcript. This portion of the record purports to contain proceedings had in court, the rulings of the court thereon, and an order allowing an exception thereto. But the formal allowance of exceptions in this fashion is not the equivalent of a bill of exceptions. Consequently, these rulings, except in so far as they are incorporated in the bill of exceptions, and some of them are so incorporated, cannot be considered by us. (See rule 14 as explained in O'Brien's Manual of Fed. App. Proc.)

The appellants claim that they "were denied a fair trial by the remarks and conduct of the court in the presence of the jury in accusing defendants' counsel with intentionally misleading the jury, with being untruthful, and with not being straightforward and honest with the jury." The attorney for the defendants, during his argument to the jury, insisted that there was no evidence that the defendant Lau Lee signed a certain letter purporting to have been written by him containing incriminating matter which had been received in evidence. The witness Chin How testified that Lau Lee signed the letter, but he also testified, when asked whether or not he knew Lau Lee's signature, "No, I don't know, but I asked someone to read it for me." During the closing argument of Mr. Moore for the government he stated, "Then he [Mr. Patterson, defendants' attorney] makes the point that there was no expert to show here that this is Lau Lee's signature. He [meaning Chin How] pointed it out." Whereupon he was interrupted by attorney for the defendants with the statement: "I don't think there is any evidence to support that." To this the court replied:

"Your statement here before is incorrect, and was not in evidence.

"Mr. Patterson. May I have an exception, your Honor?

"The Court. Exception noted.

"Mr. Moore. As a matter of fact, he did recognize the signature the second time, Mr. Patterson.

"The Court. Your statement is not correct (interrupting).

"Mr. Patterson. I am positive—

"The Court. May I continue, Mr. Patterson?

"Mr. Patterson. May I explain?

"The Court.—before I am interrupted. In your argument to the jury you made the statement time and time again there was not a scintilla of evidence going to show that Lau Lee put it on there, and that they brought in no evidence on that. You have practiced long enough in this court to know you are not to make statements that are untrue, and which should be known to be absolutely untrue by you, Mr. Patterson. I refer—

"Mr. Patterson. I take issue with the Court."

After this colloquy the reporter read his notes to the attorneys during a recess, and thereafter when the court reconvened the following colloquy occurred:

"Mr. Patterson. When this man was on the stand his attention was called to a letter and he said: 'Did you receive this letter,' and he said 'Yes.' 'Are you familiar with Lau Lee's signature,' and he said 'Yes,' and the letter was shown him, this letter here was shown him, and he says, 'Do you know this signature?' and the witness on the stand said, 'No, I do not,' or words to that effect, but, he said, 'Someone read it to me'; then he said after somebody had read it to him then he was able to say this is the letter and this is the man's signature.

"The Court. He did not make that statement, Mr. Patterson, that after somebody read it to him that he was able to tell whose it was.

"Mr. Patterson. But immediately before that he testified: 'I don't know his signature but somebody read it to him,' and then after it was read to him he knew it was his signature.

"The Court. That is not what he said, Mr. Patterson. What I am getting at is this, if you had gone with that to the jury in a straightforward, honest manner it would have been practically all right, but you concealed what he had given in there.

"Mr. Patterson. Is your Honor through?

"The Court. Not quite.

"Mr. Patterson. Your Honor hesitated. I thought you were through.

"The Court. You misled the jury if any person ever attempted to mislead a jury, by stating that there was not a particle or iota of evidence to show Lau Lee wrote it. If you had asked for the evidence,—if you had quoted the evidence as it was,—I sat here and I saw him, when he was asked about the signature, point to Lau Lee's signature and say 'That is it' or words to that effect, just as Mr. Moore recited it.

"Mr. Patterson. May I have an exception to your Honor's ruling?

"The Court. Exception noted.

"Mr. Patterson. And may I explain the thing as I saw it? Will your Honor give me an opportunity to explain. I didn't have a chance to finish.

"The Court. Yes.

"Mr. Patterson. It is my contention,—I say in all sincerity I have never tried to mislead this jury or any other jury in any court of law,—I say in all sincerity that on this record, when you show a man a letter and he says I do not know until somebody has read it to me whether this is his signature or not, and then he says after it was read to me that this is his signature, it is the same thing as if (I) cannot read or write and I get a letter and I ask your Honor to read the letter to me and you read the letter and say, 'Dear Mr. Patterson, I would like to call at your office on such and such a day,' and signed 'John Jones,' and that then after that was said, after the letter had been read to the witness Chun How, by this person in China, that then what he meant was that after this man had read to him and said that that was Lau Lee's signature,—just as your Honor tells me that is John Jones' signature, that then I know it, but I say that he did not identify that signature as having been signed by Lau Lee.

"The Court. If you had given that to the jury and let the jury consider it with the evidence they had heard, that was one thing, but to say after all that is in there,—it is in there more than once,—that there was not a scintilla of evidence to show that Lau Lee signed it—

"Mr. Patterson. May I also call your Honor's attention to the fact that I believe, and I do not want to misstate the evidence, that Mr. Chin How's attention was called to his testimony in the former trial, and this letter was exhibited to him and he was questioned, is this in his handwriting, and he said, 'I don't know,' the other two letters were in his handwriting.'

"Mr. Moore. That is as to the letter?

"Mr. Patterson. As to the letter.

"The Court. What Chin How stated,—if you had explained that to the jury you would have a perfectly good arguable point to go on and say there was nothing in there to show—

"Mr. Patterson. I ask at this time that if the court insists that the remarks and the criticism that was against me, before the recent recess,—if the court insists that those remarks were justifiable, that I may have an exception and assign these remarks as error prejudicial to these defendants and each one of them in this trial.

"The Court. Exception will be noted."

Counsel had a right to argue that the witness Chin How told the truth when he said he did not know the signature, and that he testified falsely when he pointed out the signature of Lau Lee. His statement that there was not a scintilla of evidence that the letter was signed by Lau Lee was incorrect. The court in admitting the letter over the objection of the defendant in effect held that the signature was sufficiently proved, if the testimony of the witness was true. It was entirely proper for the court to point this out to counsel and to the jury, but in accusing the defendants' attorney of a deliberate and dishonest attempt to deceive the jury the trial judge went too far. The effect of the judge's statement could not but prejudice the cause of the defendants, as it tended not only to discount the entire argument of their attorney but also to cast suspicion upon all the testimony introduced on behalf of the defendants by the attorney who the judge stated deliberately attempted to mislead them. The fact that the attorney was permitted to explain his statement, or argument, and that the court stated that the contention of the attorney was a legitimate argument, went far to correct the original statement of the court; but its curative value was almost completely destroyed and the original error aggravated by the statement of the judge that if any one ever attempted to mislead a jury, defendants' attorney had done so during his argument. We cannot escape the conclusion that the refusal of the judge to withdraw his accusation of misconduct on the part of defendants' attorney further prejudiced the defendants' case.

The government's brief contains an instruction to the jury directing them to wholly disregard the court's criticisms of defendants' attorney and to consider the case without regard thereto, and warned the jurors that they should not be prejudiced thereby. It is stated that this instruction was given by the trial judge. If this were true, we do not hesitate to say that the instruction might have cured the error and overcome the prejudice resulting from the judge's rebuke of counsel; but we need not, indeed we cannot properly, decide this question for the record, that is, the bill of exceptions, does not show that such an instruction was given, and its curative effect cannot be applied in the case at bar. We have referred to the matter in order that it will be

understood that we have not overlooked the claim that such an instruction was given and that it cured the error, and also to make clear that errors in the preparation of a bill of exceptions are quite as likely to result in a miscarriage of justice as errors occurring at the trial. We do not wish to be understood as holding that ordinarily an accusation by the judge in the presence of the jury that defendant's attorney is dishonest or is attempting to mislead the jury can be cured by an instruction, even if the charge is wholly disavowed and withdrawn. Such a conclusion of bad motive should never be announced by a judge except in findings upon a formal charge of misconduct, and even then not in the presence of a jury trying another person for a crime.

On the other hand, the court has the right to correct erroneous or misleading statements made by the attorneys with reference to the evidence and the resulting prejudice to the defendants must be borne by them; but when the court goes further and not only impugns his conduct but also his motives, he has gone too far. The ultimate question in every criminal case is whether the defendant shall be deprived of his property or liberty or life, and that question should not be obscured or affected by the consideration of the motives of the defendant's attorney.

For this error the case must be reversed.

Judgment reversed.