Edwin Arnold **KRAFT**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15357.

United States Court of Appeals Eighth Circuit.

Dec. 17, 1956.

Samuel J. Wettrick, Seattle, Wash. (Fred J. Wettrick and George J. Toulouse, Jr., Seattle, Wash., were with him on the brief), for appellant.

Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., was on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment and sentence finding appellant guilty on five counts of an indictment charging him with a scheme to defraud and the use of the United States mails in furtherance of such scheme in violation of Section 1341, Title 18, U.S.C. We shall refer to the appellant as defendant throughout this opinion.

The indictment, in effect, charged that the defendant from on or about February 1, 1954 and continuing to on or about September 1, 1954 at Los Angeles, California, at St. Paul, Minnesota and at divers other places devised a scheme to defraud persons who could be induced to pay money to defendant in anticipation of receiving "rare geraniums" and for obtaining money from such persons by false and fraudulent pretenses through advertisements placed in various newspapers, including the St. Paul Dispatch and Pioneer Press, St. Paul, Minnesota, and for the purpose of executing such scheme wilfully and knowingly used the United States mails. The indictment was returned by a grand jury sitting in St. Paul, Minnesota on February 5, 1955, following which defendant was arrested in the vicinity of Los Angeles, California on February 10, 1955. He was enlarged on bail in the amount of $3,000 by the arresting authorities in the State of California. In anticipation of trial at the regular April term of court in St. Paul arraignment was set for March 7, 1955 but at defendant's request and with the agreement that no motions were to be made attacking the sufficiency of the indictment before trial defendant's arraignment was set for the day of trial which was fixed at April 11, 1955, the opening of the St. Paul criminal jury term, and defendant was notified of the trial date. Defendant claims that owing to lack of funds he was unable, following his arrest, to secure counsel for his defense. He concluded to go to St. Paul, pursuant to the terms of his bail bond, by way of Seattle, Washington to consult Mr. Fred J. Wettrick, an attorney at law, who had on some former occasions represented him as his attorney, with the hope that he could secure him to represent him in the instant case. He was not successful in employing Mr. Wettrick and arranged to proceed to St. Paul by airplane. The plane on which he had

accommodations was reported some two hours late and he accordingly telegraphed the United States District Attorney at St. Paul advising him that his arrival might be late because of the delay in air service and the government attorney called the attention of the court to this telegram. He arrived at St. Paul on April 11, 1955 at 10:20 A.M. and reported at the United States District Attorney's office at 11:20 A.M. In the meantime his $3,000 bail bond had been declared forfeited by direction of the court and it was ordered that defendant be taken into custody by any United States Marshal and that his bail in the future would be fixed at a higher sum to be determined by the court in the event he appeared. On the defendant's reporting at the United States District Attorney's office he was, pursuant to the court's direction, taken into custody by the United States Marshal. Thereafter, the court fixed the amount of defendant's bail bond at $25,000 although the United States District Attorney asked that it be fixed at not less than $15,000. The surety on defendant's $3,000 bond consented that the bond be reinstated and after defendant secured counsel a motion was made asking that it be reinstated and accepted in lieu of the $25,000 bond as ordered by the court, but this request was denied and defendant was incarcerated in the county jail where he remained up to and during the time of the trial except for such times as he was required to be in court. A motion for a continuance was submitted by the defendant before he secured an attorney asking for a continuance of sixty days in order to secure counsel and to enable him to prepare for trial but this motion was denied. On the 19th of April, 1955 defendant appeared by counsel who was advised that the court had on its own motion set the case down for trial on April 25, 1955, thus giving counsel for defendant six days within which to prepare for the trial. On the date set for the opening of the trial defendant appeared in person and by his attorney and a prior motion for continuance having been denied, his attorney answered that he was ready for trial. The trial accordingly began on the 25th day of April, 1955 and the jury returned a verdict on May 6th, 1955.

It appeared from the evidence that defendant conducted a mail order business in which he placed newspaper ads through the mails under the trade name of "Seminole Gardens" at Cornell, Los Angeles County, California, offering "rare geraniums" at four for $1.00 with a "Money Back Guarantee". Defendant prepared the ad copy for the newspapers and it was published in about seventy-five or eighty-five newspapers. The ad states:

"Rare and Beautiful

"4 Geraniums—$1.00

"(Picture) Direct from Sunny California Fields for House Plants or Outside Gardens

"Now, at last, you may have a fine assortment of these world famous California Geraniums for your home or garden. These are the same plants, in approved transplanting size, which the best florist shops will feature in a few weeks at about $1.75 per plant. You'll receive four of our newest, most expensive varieties for just a few pennies each. You save up to $6.00. Instructions for planting and after care with each shipment.

"Money Back Guarantee

"Scarlet Magic Great masses of brilliant red flowers. Very prolific, will divide into dozens of new plants. Malibu Marvel Deep purple. Frequently used for mass planting on prominent California estates. Seminole Rose A silver pink Geranium with attractive dark green fringed foliage. Ocean Spray Glistening waxy white. Wonderful for cut flower arrangements and floral backgrounds.

"These 4 carefully selected plants, which will be worth up to $7.00 when in bloom a few weeks from

now, will be carefully packed and delivered postpaid for $1.00. You save up to $6.00.

"With each order, one additional surprise Free plant from our demonstration gardens, worth up to 50 cents.

4 Plants $1.00        8 Plants $1.75
12 Plants $2.50

"Send Cash, Check or
Money Order to
"Seminole Gardens
"Cornell (L. A. County) Calif."

The ad was ordered published by letters mailed to the St. Paul Pioneer Press and Dispatch, St. Paul, Minnesota, and five such letters furnished the basis for the five counts of the indictment. The ads which were inserted early in April of 1954 quickly produced thousands of orders received through the mails.

It was the claim of defendant that he had arranged with certain named gardeners in the vicinity where he was operating to furnish the geranium plants and that many were furnished and sent by defendant to fill orders received by him, but that the season in southern California was unusually cold and that the plants did not grow or develop satisfactorily nor with their usual rapidity and that the orders soon exceeded the supply and that he in good faith attempted to supply them though delays were inevitable, and his evidence went chiefly to the question of his lack of criminal intent and his claim that his failure resulted from climatic conditions and misfortunes rather than any purpose on his part to defraud his customers. It is not our purpose here to narrate in any detail the testimony in the case.

At the close of the government's case and again at the close of all the evidence defendant moved for a judgment of acquittal and each of these motions was denied. The court sent the case to the jury on instructions to which certain exceptions were saved and the jury returned a verdict of guilty. The defendant then moved for judgment of acquittal notwithstanding the verdict on the grounds alleged in his motion for judgment of acquittal interposed at the close of all the evidence and this motion was denied and judgment and sentence entered pursuant to verdict of guilty.

Defendant seeks reversal on substantially the following grounds: (1) Irregularities in preliminary proceedings constituted denial of due process of law; (2) The conduct of the judge was prejudicial to defendant; (3) The court erred in rejecting certain specified exhibits offered on behalf of defendant; (4) The court erred in admitting government's exhibit 93; (5) The court erred in instructing the jury that a person is presumed to intend the necessary and natural consequences of his acts; (6) The court erred in failing to give defendant's requested instruction as to money received; (7) The court erred in refusing defendant's request for instruction as to character testimony; (8) The court erred in making disparaging comments with regard to certain of defendant's exhibits and (9) The evidence failed to sustain the verdict and the court erred in failing to direct entry of judgment of acquittal.

■ Complaint is made that defendant was denied due process of law by reason of the proceedings prior to his trial on the indictment. Defendant at all times material to the issues in this case was a resident of Glendale, California. Following his arrest he gave bail bond in the amount of $3,000. Because of financial difficulties and the attachment of his funds and other property, according to his statement when inquiry was made of him by the court, he had been unable to employ counsel because without available funds. His bond required him to appear for trial in St. Paul but he was delayed en route by reason of the delay in the airplane from Seattle to St. Paul but, evidencing his good faith, he telegraphed the United States District Attorney of this fact and the United States District Attorney so informed the court. The court convened at 10:00 A.M. on April 11, 1955 and the defendant did not appear at the United States District Attorney's office until 11:20 A.M. of that day. The

court ordered the bond forfeited and ordered him taken into custody of the marshal which was accordingly done. On inquiry he represented to the court that he was without funds and had been unable to secure the assistance of counsel and asked that counsel be appointed to represent him in these preliminary matters. This request was denied. He then, without the assistance of counsel, presented an application for a continuance for a period of sixty days to enable him to secure the assistance of counsel and to enable him to prepare for trial. This too was denied. His bond was then fixed at $25,000, in default of which he was placed in jail where he was held in a strange city two thousand miles from his home, without relatives, friends or acquaintances, without funds and without the assistance of counsel. There was nothing to indicate that he was a desperate or dangerous character or that he would not be present when required, without the hardship of incarceration before his guilt had been proven and while the presumption of innocence existed. United States ex rel. Rubinstein v. Mulcahy, 2 Cir., 155 F.2d 1002. In fact he had appeared in an attempt to comply with the provisions of a $3,000 bond. When, after about eight days spent in the jail, through distant friends he secured the assistance of local counsel, application was made to reinstate the $3,000 bond and to vacate the order fixing his bond at $25,000 but this also was denied. Incarcerating the defendant in jail certainly did not facilitate his efforts to secure counsel nor did it facilitate his efforts to prepare for trial after counsel had been secured. As has been noted, the United States District Attorney did not suggest a bond in an amount greater than $15,000. Although the defendant had appeared in response to a $3,000 bond his bond was fixed at $25,000 which, as must have been manifest to the court, he was unable to give. In thus fixing his bond at $25,000 the court practically denied bail by fixing the amount unreasonably high in violation of the Eighth Amendment to the United States Constitution. United States v. Motlow, 7 Cir., 10 F.2d 657.

The Fifth Amendment of the Constitution provides that no person shall be deprived of life or liberty without due process of law and the Sixth Amendment of the Constitution provides that in all criminal prosecutions the accused shall have the right to have compulsory process and the assistance of counsel. He is entitled to the assistance of counsel at all stages of the proceedings subsequent to the indictment, including those preliminary to his trial. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1022, 82 L. Ed. 1461. As said in Johnson v. Zerbst, supra:

"The Sixth Amendment guarantees that: 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' "

When defendant appeared without counsel and in answer to inquiries explained that he was without funds and unable to secure counsel, although he had made an effort to do so, the court should have appointed counsel to represent him to enable him to present his motion for a continuance and his motion to restore his original bond. In these preliminary proceedings, under the circumstances disclosed by the record, we think the court, in refusing to afford defendant the assistance of counsel, in forfeiting his appearance bond with knowledge that he was en route to St. Paul, and in fixing his bond at $25,000, acted arbitrarily and in abuse of its judicial discretion.

It is true that the conduct of the defendant subsequent to his arrest is not to be commended nor approved. He doubtless should have come to St. Paul earlier even though he had been unable to secure counsel and his actions in this regard were evidently very exasperating. However, he was not being tried for contempt of court but the charge was a serious, independent crime in which he was entitled to a fair trial with all the safeguards provided by the Constitution.

It is contended that certain remarks of the trial judge during the progress of the trial were unwarranted and prejudicial. One of these remarks was in the nature of a reprimand of counsel for defendant. During the course of the trial Mr. Linus J. Hammond, who represented the defendant, was interrogating him with reference to certain records. In the course of the examination the following occurred:

"Q. (By Mr. Hammond)  And did I a few days before this case began present to you in the Ramsey County Jail—

"The Court:  Now, just a moment.

"Q. (Continuing)—a number of records?

"The Court:  Does counsel hear me?

"Mr. Hammond: Yes, I hear you, Your Honor.

"The Court: All right. You just refrain from any such pettifoggery as that in this Court.

"Mr. Hammond: I had no intention to be pettifogging, Your Honor. My question is directed to whether or not—

"The Court: I understood your question, and I sustained an objection to the line of inquiry that you are proceeding on, and you know that it is improper and this Court knows that it is improper.

"Mr. Hammond: I don't—

"The Court: Now, just a moment. I don't want to hear any more of it.

"Mr. Hammond:  Exception.

"The Court: You may have all the exceptions that you care for. I am not going to permit that in this Court."

We fail to see any impropriety in the action of Mr. Hammond in referring to the place and time where he had called the attention of the witness to certain records. True, the witness was not at his hotel nor at counsel's office, nor at his home, but he was in jail pursuant to an order of the court. Apparently counsel was acting in good faith and we think the reprimand improper. Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101; State v. Jensen, 151 Minn. 174, 186 N.W. 581; State v. Peirce, 178 Iowa 417, 159 N.W. 1050; 23 C.J.S., Criminal Law, § 989, p. 342; 70 C.J.S. p. 696. Counsel in the presence of the jury was charged with "pettifoggery". We may take judicial notice of the fact that Mr. Hammond is a reputable attorney of high standing. He was formerly an Assistant United States Attorney for the District of Minnesota. Pettifoggery is defined in 70 C.J.S. at page 696 as follows: "Practices in the court room by a lawyer, which are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice." In Sprinkle v. Davis, supra, the court addressing itself to alleged misconduct of the trial judge in rebuking counsel for alleged breaches of certain rules of court, among other things, said [111 F.2d 930]:

"The judge charged defendant's counsel with constant breaches of the rule, and declared that he would impose a fine upon them if the practice continued. This statement we think was improper and highly prejudicial. Even if it be conceded that the offered evidence was inadmissible, counsel were nevertheless entitled to offer it in good faith, free from threat of punishment by the court. Actions taken by counsel during the course of trial under a mistaken view of the law do not

constitute contempt of court; and a careful examination of the record convinces us that there was no such perseverance by defendant's counsel in a mistaken point of view contrary to the rulings of the court as to constitute improper conduct on their part."

In State v. Jensen, supra, a reversal was had in a criminal case for remarks of the trial judge in rebuking counsel for the defendant. In the course of the opinion it is there said [151 Minn. 174, 186 N.W. 583]:

"The use by the trial judge, in the presence of the jury, of language which tends to bring an attorney in the case into contempt before the jury has been held a sufficient ground for setting aside the verdict."

■ The trial court could scarcely have used language more apt to bring the attorney here involved into contempt before the jury than to charge him with "pettifoggery". Other remarks during the course of the trial are alleged to have been prejudicial—one to the effect that certain documentary evidence should have been in such shape that it would have been understandable to the court, the jury and counsel. In view of the fact that counsel had to prepare for trial while his client was in jail, voluminous documents were involved, and counsel had but six days to prepare, this remark, we think, was an unfair reflection on counsel and further tended to bring him into contempt before the jury. In 23 C.J.S., Criminal Law, § 989 p. 342, the applicable law is stated as follows:

"* * * a remark or conduct by the judge conveying an unwarranted reprimand, or a severe criticism on the methods of, or discrimination against, accused's counsel, or an attack upon the motives of counsel with respect to particular conduct during the trial * * * is improper."

■ A careful consideration of the record convinces us that the criticisms or reprimands administered to defendant's counsel were unwarranted and prejudicial.

It is urged that the court committed prejudicial error in rejecting various designated exhibits offered by the defendant and it is also urged that the court erred particularly in admitting in evidence government's exhibit 93, consisting principally of carbon copies of thirty-nine letters from the Minneapolis Tribune to defendant in 1950 when defendant was operating a mail order tulip bulb venture out of Seattle under the name of Canterbury Gardens. The letters intimated that defendant had been very dilatory in those instances in making refunds or delivering the bulbs which he had advertised in the newspapers. These alleged transactions of the defendant occurred some five years prior to the time covered by the indictment and were in no way connected therewith. The evidence was objected to as being evidence of other transactions in no way connected with the transaction here involved and as being incompetent, irrelevant and immaterial but the government insisted it was material on the question of criminal intent. The court at first sustained defendant's objection but with the statement that it might later and after the introduction of other evidence change its ruling in this regard. Then at the close of defendant's evidence the court ruled that it would admit this Exhibit 93. It is vigorously urged that this ruling of the court was erroneous.

■ The rule with reference to the admissibility of evidence of other criminal offenses is well stated by this court in Kempe v. United States, 8 Cir., 151 F.2d 680, 687, where it is said:

"The general rule is that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged

in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. The accused is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the information. It is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the information. Evidence of other crimes compels a defendant to meet charges of which the information or indictment gives no information, confuses him in his defense and raises a variety of false issues. Thus, the attention of the jury is diverted from the charge contained in the indictment or information. 20 Am.Jur. § 309, p. 287; Gart v. United States, 8 Cir., 294 F. 66; Paris v. United States, 8 Cir., 260 F. 529, 531.

"In the Paris case, supra, the court speaking through Judge Walter H. Sanborn, said: 'Such evidence tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts in accordance with their views on false issues rather than on the true issues on trial. Speaking of evidence of other similar offenses, the Circuit Court of Appeals of the First Circuit, in the case last cited (Fish v. United States, 215 F. 544, 545 L.R.A.1915A, 809), well said: "Evidence of this character necessitates the trial of matters collateral to the main issue, is exceedingly prejudicial, is subject to being misused, and should be received, if at all, only in a plain case." '

"In Sauvain v. United States, 8 Cir., 31 F.2d 732, 733, this court said: 'Care should be exercised in admitting evidence of other and distinct offenses; trials might soon become so involved in collateral matters that the issues would be lost sight of; moreover, if the defendant is shown to have made another sale, juries are apt to convict regardless of the evidence on the offense charged, and the defendant having no notice of the collateral charge, might be entirely unprepared to meet it.'

"In 1 Wharton's Criminal Evidence, 11th Ed., p. 485, it is said: 'Proof of other crimes cannot be shown to prove a habit or predisposition of the accused to commit crime on the ground that such proof would show a probability of the guilt of the defendant of the crime charged. Evidence of the commission of independent crimes is irrelevant where it has no tendency to prove some material fact in connection with the crime charged or where it merely tends to show that the accused is a criminal generally. In other words, evidence of a collateral offense must never be received as substantial evidence of the offense on trial; *and this rule extends to the proof of the accusation of another crime as well as to evidence of its actual commission.*' " (Emphasis supplied.)

There is, of course, an exception to the general rule and under proper conditions proof of similar offenses is admissible on the question of intent but, as said by this court in Paris v. United States, 260 F. 529, 531:

"In cases falling under such an exception to the rule, however, it is essential to the admissibility of evidence of another distinct offense that the proof of the latter offense be plain, clear, and conclusive. Evidence of a vague and uncertain character regarding such an alleged offense is never admissible."

Manifestly, defendant could not be called upon to be prepared to defend himself against mere accusations of some other offense. This ruling of the

court, we think, was very prejudicial to the defendant and requires a reversal of the judgment in this case.

Taking as his text that, "The fundamental question involved in this case is whether appellant, at the time he undertook this business and used the mails to advertise the geraniums, intended to defraud anyone", counsel for defendant persuasively argues that the evidence is insufficient to prove criminal intent. The question of intent is usually a question of fact to be determined by the jury. It is rarely susceptible of direct proof and the state of one's mind can usually be inferred only from outward acts and surrounding facts and circumstances.

We must view the evidence in a light most favorable to the prevailing party and we must assume that all conflicts in the evidence were resolved by the jury in favor of the government, and the government as the prevailing party is entitled to the benefit of all such favorable inferences as may reasonably be drawn from the facts proven. If, when so viewed, reasonable men might differ as to the facts proven, then the question as to the sufficiency of the evidence to sustain the verdict of guilty became one of fact to be determined by the jury and not one of law to be determined by the court on motion for judgment of acquittal. We shall not lengthen this opinion by any detailed recital of the evidence, but a careful consideration of all the evidence convinces us that when viewed in a light most favorable to the government it cannot be said that there is not substantial evidence to sustain the verdict.

Other contentions of counsel for defendant as to errors of the trial court in instructing the jury and in ruling on the admissibility of evidence go to matters which are unlikely again to occur on the retrial of this case and we pretermit any further consideration of those alleged errors presented by briefs of counsel and oral arguments. On the whole record we are convinced that the defend-ant did not have a fair trial and for the reasons above enumerated and considered the judgment appealed from is reversed and the cause remanded to the trial court with directions to grant a new trial.