**Patrick B. PADDOCK, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17978.**

United States Court of Appeals
Ninth Circuit.

July 23, 1963.

See also 302 F.2d 514.

Maurice D. L. Fuller, Jr., San Francisco, Cal., for appellant.

C. A. Muecke, U. S. Atty., Tom Karas, Asst. Atty. Gen., Phoenix, Ariz., for appellee.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal (28 U.S.C. § 1291) from a sentence for bank robbery imposed on appellant after he was found guilty of such crime (18 U.S.C. § 2113(a)) by jury verdict.

We adopt, with slight additions, the statement of fact set forth by appellee.

"On January 26, 1960, a lone gunman entered the Valley National Bank located at 19th Street and E. McDowell Road, City of Phoenix, State of Arizona. This bank was a member of the Federal Deposit Insurance Corporation on the above mentioned date. The gunman, upon entering the bank went to the window of teller Maxine Todd, brandished a gun, and gave to her a green bag ordering her to place money in it. The teller being frightened, placed $4260 in the bag and relinquished the bag to the gunman. Maxine Todd gave a detailed description of the gunman following the robbery, and subsequently identified photographs of the gunman as being appellant. She picked appellant out of a lineup, and identified appellant as the gunman at time of trial.

As the gunman was leaving the bank, the teller pointed out the gunman to Robert E. Schmidt, the Assistant Manager, who was previously alerted by the alarm set off by Miss Todd. Mr. Schmidt followed the gunman and observed him entering a compact car, red in color. Mr. Schmidt immediately left the bank, hailed a passing automobile and requested that the automobile carrying the gunman be followed. This was done, and approximately six blocks from the bank the compact automobile turned into a market parking lot, followed by Mr. Schmidt. Mr. Schmidt observed the gunman, carrying a green bag, get out of the compact automobile, and saw him enter a 1959 or 1960 Pontiac or Oldsmobile which had three aerials. Mr. Schmidt gave a description of the gunman to investigators, identified him by photograph, picked the gunman (appellant) from a lineup, and identified appellant at the time of trial as being the gunman.

Investigation subsequent to the offense revealed that the compact automobile used by the gunman was stolen on the morning of July 26, 1960. This was the same automobile recovered at the market parking lot on the afternoon of the same day.

The initial lead identifying the gunman as appellant developed when investigators having knowledge of the three aerials on the 1959 or 1960 Pontiac or Oldsmobile vehicle, and a description of the gunman, examined records at the Motor Vehicle Division as to automobiles equipped with special radio equipment. Appellant had installed, prior to the offense, amateur radio equipment and aerials on his 1960 Pontiac.

Investigation further revealed that appellant was registered and stayed at a Phoenix Motel on the date of the offense, and was then in possession of his 1960 Pontiac. Immediately following the offense, appellant returned to Tucson where his home was situated, and there removed the radio equipment and aerials from his automobile. Appellant's assigned license plates were removed from his automobile and replaced with others. Five hundred

dollars was given to his mother at this time.

On the morning of July 28, 1960, the Federal Bureau of Investigation was alerted at Las Vegas, Nevada concerning the whereabouts of appellant. A stake-out was made and the appellant was observed leaving a restaurant. At the sight of the agents, appellant broke into a run, and was ordered to stop. Appellant entered his 1960 Pontiac and left his parking space at a high rate of speed. Agent John T. Reilly, Jr. was in the street, and the automobile was driven straight at him. A shot was fired by Agent Reilly which entered the front windshield of appellant's automobile, causing appellant to stop the vehicle.

Examination and search of the vehicle produced, among other things, a blackjack, a gun and $2975 in cash. The holes which housed the antennae were masked over and painted to match the color of the automobile.

Following his arrest, appellant attempted to escape from the Las Vegas, Nevada city jail. The appellant denied the robbery at one time, denied that he had robbed any bank; and later stated that he would not admit or deny the robbery. At one point appellant admitted that the money in the trunk was part of the bank robbery. Appellant stated that eye witnesses can be mistaken, and further stated that the woman teller could also be mistaken. He was asked how he knew a woman teller had been robbed and he declined to answer."

■■ On this statement of facts, undisputed by appellant, he urges upon us that the government's case is weak, particularly as to the identification of the defendant. We find no weakness in such evidence, either with respect to its proof of guilt, or with respect to the identification of appellant as the wrong-doer.

■ Because of this alleged "weakness," urges appellant, the other "error" complained of attains a higher status and is "more prejudicial" to the appellant.

This "other error" is that the trial judge impugned the motive and conduct of appellant's trial counsel [1] *"in the hearing of the jury."*

The simple answer is that what the trial court said, to which appellant objects, was said outside the presence of the jury, while respective counsel, the court clerk and the appellant were "at the bench." (Tr. p. 847, line 14, et seq.) The trial judge specifically asked the questions and made the statements objected to after ruling in appellant's favor and asking appellant's counsel *not to leave the bench.* (Tr. p. 848, line 25.) After a further discussion, the record shows "the following proceedings were resumed in open court." (Tr. p. 849, line 17.) The question asked by appellant's counsel on cross-examination of the witness,[2] to which objection had originally been made, and to which the court permitted an answer, was then asked by the court of the witness. It was a question which ordinarily would not be permitted.[3] It was, in the court's discretion exercised in favor of appellant, permitted upon the theory of establishing the motive and credibility of the witness.

While appellant's counsel agrees that *the record* clearly shows all the so-called objectionable statements took place outside the hearing of the jury, it is urged that this *may* not be true, because defense counsel in moving for a mistrial

---

1. Appellant is represented on this appeal, and ably so, by appointed counsel who did not represent him below.

2. The question: "Helen you have a boy, don't you, in federal prison?"

3. As the trial court later stated: "I think I would have been fully justified in sustaining the objection on the ground that you can't ask the witness an incriminating question, or one that would humiliate or degrade them. The question was entirely immaterial, but out of an abundance of caution I overruled the government's objection, and permitted her to answer the question."

stated (and in so doing misstated the record) that the court made the remark "upon counsel returning to counsel table," and that it was "heard by the jury," (Tr. p. 889) and that the court did not deny the factual situation described by appellant's trial counsel. Therefore, urges appellant, the jury *might have heard*. And *might have thought* his counsel's question improper. But not only did the court permit such question to be asked; he asked it of the witness himself. How this could "tarnish" counsel for appellant in the eyes of the jury is difficult to understand—we think it more likely it would enhance his stature in their eyes.

Even were we to assume (which we cannot) that the jury did hear the remarks made by the court and the questions asked, (and that any "error" which occurred was not dissipated by the trial court's instructions to disregard his comments or anything the jury might regard as an expression of his own attitude toward the case, the appellant, or counsel) we find no merit in defense counsel's attempt to compare and correlate what here occurred with the statements made by the trial judges in the four cases relied upon by appellant—Kraft v. United States, 8 Cir., 1956, 238 F.2d 794; Lau Lee v. United States, 9 Cir., 1933, 67 F.2d 156; Withrow v. United States, 4 Cir., 1924, 1 F.2d 858; Allen v. United States, 9 Cir., 1902, 115 F. 3.

In Kraft, supra, counsel was admonished to "refrain from any such petifoggery."

In Lau Lee, supra, counsel was told by the trial judge: " * * * you are not to make statements that are untrue, and which should be known to be absolutely untrue by you. * * * [Y]ou concealed [from the jury] * * *." Of such language this court stated: "[I]n accusing the defendant's attorney of a deliberate and dishonest attempt to deceive the jury the trial judge went too far."

In Withrow, supra, the trial court said to counsel: "You had him [the witness] swear to a lie, or stuff that you knew was not true, when he swore to it."

In Allen, supra, the trial court in the presence of all jurors, before the jury was impaneled, corroborated, as a matter of personal knowledge, the statement of the district attorney that the wife of a witness had said that the defendant's attorney had tried to get her husband to give false testimony.

By no stretch of our imagination can we compare the facts presently before us with those outlined in the four cases cited above.

■ This circuit held in Newman, et. al. v. United States, 1928, 28 F.2d 681, 683:

"' '' * * * To warrant a reversal because of the conduct of the trial judge in rebuking or punishing an attorney during the trial, it must appear that the conduct measured by the facts of the case presented together with the result of the trial, was clearly prejudicial to the rights of the party." '

"General language may be found in a few cases seemingly holding that any punishment or severe rebuke of counsel in the presence of the jury is presumed to be prejudicial to his client. *We are unable to take that view. * * *"* (Emphasis added.) See also Billeci v. United States, 9 Cir., 1961, 290 F.2d 628, 629; Bush v. United States, 9 Cir., 1959, 267 F.2d 483, 487.

■ In support of an argument that statements made by the court to counsel constitute error, the party alleging misconduct on the part of the trial court must show:

" * * * that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, 613.

But even had the remarks made been prejudicial to appellant or his counsel (and we hold they were not), they were not heard by the jury, and thus could

**628**

not be prejudicial. Cf.: Callahan v. United States, 10 Cir., 1929, 35 F.2d 633, distinguishing Allen v. United States, supra, and Grock v. United States, 1923, 53 App.D.C. 146, 289 F. 544.

We have carefully read the rather long trial transcript in this case. The trial judge gave appellant a fair trial. A jury found him guilty. He has been ably represented by appointed counsel on appeal.

Finding no error, we affirm the conviction.