UNITED STATES of America,
Appellee,

v.

Richard Anthony CAPALDO, Appellant.

No. 571, Docket 32078.

United States Court of Appeals
Second Circuit.

Argued July 22, 1968.

Decided Oct. 7, 1968.

J. Daniel Sagarin, Asst. U. S. Atty. (Jon O. Newman, U. S. Atty., and Samuel J. Heyman, Asst. U. S. Atty., Dist. of Connecticut, on the brief), for appellee.

Richard L. Jacobs, New Haven, Conn. (Leander C. Gray, New Haven, Conn., on the brief), for appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

Richard Capaldo appeals from a judgment of conviction, after a jury trial in the District of Connecticut, for armed robbery of the Oakville Branch of the Waterbury Savings Bank, an institution insured by the F.D.I.C., and for jeopardizing the life of the tellers, in violation of 18 U.S.C. §§ 2113(a), 2113(b) and 2113(d). He was sentenced to 22 years in prison.

On appeal, Capaldo raises four claims which merit discussion: I. Prejudice due to a delay by the prosecution of 40 months in obtaining an indictment. II. Erroneous evidentiary rulings. III. Misstatements of fact by the prosecution during its summation. IV. Hostility towards defense counsel by the trial court. Having examined these and other of appellant's claims of error, we conclude that they are without merit. Accordingly, the judgment of the district court is affirmed.

On December 18, 1963 at about 1:10 P.M., two men dressed in bizarre clothing held up the Oakville Branch of the Waterbury Savings Bank. One of the men,

later identified as appellant's co-defendant, Ursini,[1] was dressed as a woman; the other, later found to be appellant, wore a mask and a hood over his face. The four women tellers were told to fill bags handed them with money or they would be killed. The bandits escaped with over $20,000, much of it in new bills.

The evidence against Capaldo was primarily the testimony of three members of a family—Mr. and Mrs. Robert Longo and Pamela Hansen, Mrs. Longo's daughter—who had been friends of Capaldo at the time of the robbery. Each of these three witnesses testified that Capaldo had on several occasions boasted to them that he had "pulled the Oakville bank job," and that his wife Ronnie (his girl friend then) once rode around Waterbury with the money and the guns while the police searched Capaldo's apartment. Also important were Capaldo's unexplained acquisition of wealth shortly after the robbery, and contradictions between his grand jury statements and testimony of government witnesses concerning his whereabouts during and after the robbery.

## I. The Pre-Prosecution Delay

■ Appellant claims that the bringing of the indictment 40 months after the commission of the crime violated his Sixth Amendment right to a speedy trial. In a series of cases culminating in United States v. Feinberg, 383 F.2d 60 (2 Cir. 1967), this court has considered the merits of such claims and has held, consistent with the views of the Supreme Court in United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed. 2d 627 (1966), that the statute of limitations is the primary guarantee against the bringing of stale criminal charges. United States v. Feinberg, 383 F.2d at 64. As the prosecution in the present case was commenced well within the

five year period of limitations, it is incumbent upon the accused to demonstrate that the delay has so impaired his capacity to prepare a defense as to amount to an infringement of his right to a speedy trial or a denial of due process.

■ Although appellant has attempted to meet this burden, we are convinced that he has not shown sufficient prejudice by the delay to render his prosecution invalid under the Fifth or Sixth Amendments. No witnesses were lost. Capaldo was able to give a coherent account of his version of the events on the day of the robbery; he had been interviewed concerning the crime shortly after it was committed and thus was able to fix the day in his mind. He also had the benefit of contemporaneous statements given by the tellers and was able to cross-examine them at the trial. It is usually in the public interest, and frequently to the advantage of the prospective defendant, that charges not be brought until the prosecutor has completed his investigation and feels that there is sufficient likelihood of gaining a conviction. There is no reason to suspect that the government's delay in this case was unwarranted.

## II. Alleged Errors in the Admission and Exclusion of Evidence

### A. Capaldo's Grand Jury Testimony

■ Appellant claims that his grand jury testimony, part of which was introduced at trial, was obtained in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel because he was a "de facto" defendant at the time of the hearing and because he was not permitted to have counsel with him during the hearing. We disagree. This court has long followed the rule that the Fifth Amendment does not prohibit

1. It appeared at trial that Ursini and Capaldo were friends and that Ursini worked at the hotel where Capaldo lived just before the robbery. Capaldo and Ursini were tried together. Ursini was sentenced to 24 years in prison. Although Ursini filed a notice of appeal and was granted leave to appeal *in forma pauperis*, his appeal was withdrawn before the briefs were filed.

potential or *de facto* defendants from being summoned before a grand jury. See, e. g., United States v. Winter, 348 F.2d 204, 207–208 (2 Cir. 1965); United States v. Pappadio, 346 F.2d 5 (2 Cir. 1965).

■■ Appearing before a grand jury is not inherently coercive. United States v. Cleary, 265 F.2d 459, 462 (2 Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). The facts in this case indicate that Capaldo's testimony was completely voluntary. When he appeared on April 11, 1967, he was told of the nature of the grand jury proceeding, that he was a potential defendant, that he had a right to remain silent and that his testimony would be recorded and could be used against him. A properly called and fully warned witness cannot complain about a statement voluntarily given; having chosen to tell his story he cannot later complain of his failure to assert his privilege to remain silent. Cf. United States v. Winter, 348 F.2d 204, 210–211 (2 Cir. 1965).

■ Likewise, Capaldo's Sixth Amendment right to counsel claim is without merit. Rule 6(d) of the Federal Rules of Criminal Procedure prohibits defense counsel from entering the grand jury room during the hearing. Capaldo was told, however, that he had a right to counsel and that he would be permitted to consult with counsel immediately outside the grand jury room whenever he so desired. Capaldo chose to proceed without counsel. Having done so he cannot now complain that he has been deprived of his Sixth Amendment rights. The Supreme Court has held that a witness before a grand jury is not entitled to representation by counsel. In re Goban, 352 U.S. 330, 333, and dissenting opinion id. at 346–347 (1957). See also United States v. Scully, 225 F.2d 113, 116 (2 Cir. 1955). We think that the rule under which appellant was free to leave the grand jury room at any time to consult with counsel is a reasonable and workable accommodation of the traditional investigatory role of the grand jury, preserved in the Fifth Amendment, and the self-incrimination and right to counsel provisions of the Fifth and Sixth Amendments.

Appellant further claims that the trial court erred in permitting the prosecution to read to the jury certain inculpatory portions of his grand jury testimony while denying defense counsel's request that other, exculpatory portions also be read. The rule, stated in United States v. Rosenblum, 339 F.2d 473, 475 (2 Cir. 1964), is that the prosecution is not required to offer the defendant's entire grand jury testimony so long as "the statements admitted are given sufficiently in their context so as not to confuse the trier." See also United States v. Johnson, 165 F.2d 42, 48 (3 Cir. 1947).

■ The portions of Capaldo's grand jury testimony read by the prosecution dealt with Capaldo's claims of alibi and his denial of having made admissions to the Longos and Miss Hansen. Included in this testimony were references to Capaldo's purchase of horses, saddles and a diamond ring for his girl friend. The portions which appellant sought unsuccessfully to have read related to his claim that he had borrowed money from his co-defendant Ursini. While the statements which defense counsel sought to have admitted were not totally unrelated to those admitted, they were not essential to a fair and impartial understanding of the statements read. We think that the trial court was well within its discretion in excluding those parts of the grand jury testimony offered by the defendant.

## B. Ursini's Grand Jury Testimony

■ When appellant attempted to call the co-defendant Ursini to testify as part of his case, Ursini's objection was sustained. Appellant then offered a portion of Ursini's grand jury testimony in which Ursini admitted lending money to appellant. Assuming, *arguendo*, that a declaration against one's penal interest, if colorably trustworthy, should be admissible as an exception to the hearsay rule, we find that it was not error for the trial judge to exclude this testimony,

**825**

as it was neither against Ursini's interest when made nor sufficiently trustworthy to come under such an exception.

C. Other Evidentiary Rulings

As part of the government's proof of sudden acquisition of wealth, it called Michael Guarini who testified that Capaldo had paid him for a motor job shortly after the robbery in new five and ten dollar bills. Guarini had turned this money over to the police. It appears that testimony with respect to whether these were consecutively numbered bills or whether they were identified as part of the "bait-money" (money known to have been taken from the bank) was presented in a somewhat confusing manner. It is apparent, however, that appellant was in no way prejudiced by this evidence, since the jury's inquiry about "bait-money" during deliberations was answered categorically in his favor.

■ We also find that the trial court acted within its discretion in refusing appellant's request for more time to bring in evidence as to Longo's credibility, in view of its doubtful admissibility and the extensive cross-examination of Longo on the same subject.

We have examined the other claims of error in evidentiary rulings and find them to be without merit.

### III. The Government's Summation

■ Appellant contends that the closing argument of the government attorney was improper in that it contained misstatements of fact and argument not based on the record. We find that in the context in which the statements complained of took place, they were fair comment, except for the statement that appellant had paid for his daily purchases of gas and oil from Mr. Guarini with new bills, for which there was no support in the record. However, no objection was

raised at trial to the statement about gas and oil purchases. The factual error was apparently inadvertent.[2] In view of these circumstances, we feel that there was not such a clear abuse or such prejudice as would warrant reversal. Cf. Weiss v. United States, 122 F.2d 675 (5 Cir. 1941); United States v. De-Alasandro, 361 F.2d 694, 697 (2 Cir. 1966).

### IV. The Trial Court's Admonitions to Appellant's Counsel

■ Appellant claims that he was denied a fair trial because of the trial judge's hostility towards defense counsel. This contention is also without merit. An examination of appellant's "Index of Statements Displaying Hostility" reveals that almost all of the allegedly antagonistic statements were made while the jury was not present. A judicial reprimand, even if unwarranted, is no basis for reversal if it is made outside the hearing of the jury. Paddock v. United States, 320 F.2d 624 (9 Cir. 1963); Harris v. United States, 367 F.2d 633 (1 Cir. 1966). The statements made in the presence of the jury were no more than routine warnings and rulings. A full reading of the record reveals no indication that the trial court dampened the ardor of defense counsel so as to deprive appellant of the effective assistance of counsel or in any way prevented the jury from exercising an impartial judgment; rather it reveals a fair and impartial trial conducted with the utmost concern for the rights of the defendant and the convenience of counsel. Paddock v. United States, supra, 320 F.2d at 627, Johnson v. United States, 356 F.2d 680, 683–684 (8 Cir. 1966).

We find it unnecessary to discuss appellant's other claims of error, which we find to be without merit. The judgment is affirmed.

2. That this misstatement was not deliberate is supported by the fact that it is in accord with Mr. Guarini's Jencks Act statement. Appellee's appendix at 64.