**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy P. ALLISON, Defendant-Appellant.**

**No. 72–1454.**

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1973.

John C. Ciolino, George M. Leppert, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Patrick C. McGinity, Mary Williams, Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before RIVES, WISDOM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case involves the use of a defendant's grand jury testimony by the prosecution in its case in chief against him in a criminal trial. Because we find no theory of evidence that will support the admission of the entire 160 page transcript of the testimony given by defendant before the grand jury, we reverse and remand for a new trial.

Defendant Roy P. Allison, a Police Juror of St. Tammany Parish, Louisiana supervised the parish clean-up work necessitated by the devastation of Hurricane Camille in 1969. Because the parish had been declared a disaster area, the United States Government reimbursed the parish for clean-up expenditures. In a two count indictment, Allison was charged (1) with conspiring to defraud the United States, in violation of 18 U.S.C.A. § 371, by submitting to the St. Tammany Police Jury accounting statements that fraudulently overstated the amount of labor, time, equipment, and personnel employed in cleaning hurricane debris from the public roads of the parish, and (2) with knowingly and willfully submitting a false accounting to the United States Corps of Engineers, in violation of 18 U.S.C.A. § 1001. He was found guilty by a jury on both counts and was sentenced to two years in prison on each count, with the sentences to run consecutively.

The procedure the Government followed in this case appears to be novel. At the trial, early in the presentation of the Government's case, two prosecuting attorneys read into evidence, before the jury, the complete transcript of Allison's testimony before the grand jury, one attorney representing the United States Attorney, and the other representing the answering defendant Allison. The transcript was replete with prejudicial and irrelevant evidence. In rapid-fire fashion, Allison was several times asked complex, multifaceted questions about his hurricane clean-up activities but was not given time to answer. In response to many other questions from the United States Attorney, Allison frequently re-

plied that he did not know or did not remember the requested information. All of this testimony—the unanswered questions and the answers that revealed nothing but uncertainty, lack of knowledge, or failure of memory—was read to the jury.

The harmfulness of this procedure is readily apparent. Without regard to any answers which he may have given that would tend to prove some relevant fact at issue in the trial, it gave the Government an opportunity to put before the jury many questions left unanswered by Allison, questions that may have been improper and objectionable in an adversary proceeding, and to demonstrate to the jury Allison's uncertainty and inconsistency as to information that was either irrelevant, or, if relevant, could not be proved by his answers. Much of the testimony would have little probative force except to prove Allison's uncertainty about facts that the Government thought he ought to be certain about. This approach to the use of the testimony was revealed on oral argument of this appeal when the Government argued that the testimony "was put into evidence to show how he could not remember various relevant facts, was inconsistent, etc." and that the "grand jury testimony showed how uncertain Allison was about many aspects of these transactions."

At the threshold, it is quite apparent that whether or not Allison knew or could remember particular facts, or was uncertain or inconsistent, at the time he testified before the grand jury, is fundamentally irrelevant to the Government's case in chief. Allison's behavior before the grand jury is simply not logically connected to, and can therefore have no bearing upon, the ultimate proof required of the Government. His demeanor and his ability or inability to answer the questions propounded to him by the United States Attorney have no probative value for proving he committed the crimes charged. The Government has cited no case which states

otherwise, either by explicit holding or by dictum.

Whether the grand jury testimony could be used in rebuttal to impeach Allison's trial testimony need not be decided here. Allison had not testified when this evidence was admitted, and we are persuaded that his decision to testify at the trial may have been precipitated in part by the harmful implications of his grand jury testimony or, in view of the unanswered questions, his lack of testimony.

■ The controlling issue in this case is that of relevancy. Allison makes no broad attack on the general admissibility of grand jury testimony. He does not argue that the testimony was inadmissible because it was secret. The Government, though, argues as if the decision as to secrecy or nonsecrecy under Rule 6(e), F.R.Crim.P., determines admissibility. Such reasoning amounts to a legal *non sequitur*. Simply because evidence may be disclosed under Rule 6 (e) does not make it otherwise admissible. Further, he admits that the hearsay rule does not prevent the admission of grand jury testimony for impeachment, as an admission, or for the purpose of proving perjury. Under proper circumstances, grand jury testimony may be admitted under the prior reported testimony exception to the hearsay rule. *See* 2 F. Wharton, Criminal Evidence §§ 470–92 (12th ed. 1955); C. McCormick, Evidence §§ 230–38 (1954). Finally, the case has no self-incrimination ramifications. Because Allison testified only after being fully warned that his grand jury testimony could be used against him in later proceedings, he waived his Fifth Amendment privilege to refuse to be a witness against himself.

■■ Although the record does not reveal the trial court's reasons for overruling Allison's objections to the introduction of the evidence, a District Court has wide discretion in determining relevance and materiality, and its ruling should not be disturbed in the absence

of an abuse of discretion. United States v. Garr, 461 F.2d 487 (5th Cir. 1972); O'Brien v. United States, 411 F.2d 522 (5th Cir. 1969); Shale v. United States, 388 F.2d 616 (5th Cir.), cert. denied, 393 U.S. 984, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968); 3 Orfield, Criminal Procedure Under the Federal Rules § 26:440 (1966). Where the proffered evidence is of substantial probative value, and will not tend to prejudice or to confuse, all doubt should be resolved in favor of admissibility. Holt v. United States, 342 F.2d 163 (5th Cir. 1965).

■ Evidence in criminal trials must be "strictly relevant to the particular offense charged." Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). The admission of irrelevant facts that have a prejudicial tendency is fatal to a conviction, even though there was sufficient relevant evidence to sustain the verdict. Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897); Hall v. United States, 150 U.S. 76, 14 S.Ct. 22, 37 L.Ed. 1003 (1893).

■ The determination of relevancy is not automatic or mechanical. Courts cannot employ a precise, technical, legalistic test for relevancy; instead, they must apply logical standards applicable in every day life. *See* 1 Wigmore on Evidence § 27 at 406 (3d ed. 1940). The relevancy or irrelevancy of particular evidence, therefore, turns on the facts of the individual case. Relevancy has been variously defined, but, reduced to its essentials, relevancy describes the logical relationship between a proffered item of evidence and a proposition that is material or provable in a given case. *See* United States v. Craft, 407 F.2d 1065 (6th Cir. 1969); C. McCormick, *supra,* § 152 ("the tendency of the evidence to establish a material proposition"); 1 F. Wharton, *supra,* § 148; 1 Wigmore, *supra,* § 12. According to Rule 401, Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 215 (1972), relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not exist because the conclusion in question may be logically inferred from that evidence. *Cf.* Butler v. Watkins, 80 U.S. (13 Wall.) 456, 20 L.Ed. 629 (1871).

■ Applying these standards to the present case, we find a large portion of the grand jury testimony most certainly not relevant to the proof of any fact in controversy. The prejudicial effect of the irrelevant portions of the transcript requires that the conviction be reversed and that the case be remanded for a new trial.

The Government's reliance on United States v. Capaldo, 402 F.2d 821 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969), is misplaced. In *Capaldo,* specific inculpatory portions of the defendant's grand jury testimony were read to the jury. This testimony was admissible as an admission inconsistent with defendant's plea of not guilty. The entire transcript was not put into evidence, so the *Capaldo* court had no occasion to consider the admissibility of irrelevant portions.

The Government argues that the error here, if any, was harmless and should not be viewed as prejudicial. We disagree. The Government put the testimony into evidence for the purpose of influencing the jury, and we cannot conclude that it was not successful.

We do not here decide whether, on remand, the Government may find portions of the testimony that can be admitted as admissions or might be relevant to precise questions in issue and that can be admitted into evidence without the prejudicial confusion caused by admitting the transcript as a whole. These determinations of specificity and relevancy we leave to the sound discretion of the District Court on retrial.

Reversed and remanded.