STATE OF MINNESOTA v. ROBERT E. ENGLISH.[1]

Nov. 14, 1895.

Nos. 9606—(114).

**Criminal Trial—Improper Remarks by Court.**

So far as appears by the record, defendant, on the trial, fairly and openly offered in evidence certain papers as a part of his defense, which the court received, and the same were competent evidence. His attorney, in making his closing argument to the jury, commented on these papers, when he was interrupted by the judge, who declared that, if the papers were put in evidence, it was done surreptitiously. *Held* error.

**Same.**

Certain other remarks of the judge in his charge to the jury *held* prejudicial error.

[1] Reported in 64 N. W. 1136.

Appeal by defendant from an order of the district court for Norman county, Ives, J., denying a motion for a new trial.   Reversed.

*R. J. Montague*, for appellant.

*H. W. Childs*, Attorney General, *George B. Edgerton*, and *Alexander Mackel*, for respondent.

CANTY, J.   The defendant was convicted on an indictment under G. S. 1894, § 6713, charging him with the larceny of a replevin bond,—one of the records in an action which had been brought before a justice of the peace. ` From an order denying his motion for a new trial, he appeals.

Defendant commenced the action and filed the bond in question for the purpose of replevying a quantity of wheat, and, when the wheat was delivered to him on the writ, he dismissed the action, and carried away the bond.   On the trial on the indictment, he testified in his own behalf that he had an incomplete complaint and some other papers at the justice's office, had this bond among them, and carried it away without knowing he had done so.   The following is a part of the settled case:

"Q. Was there any intention on your part at that time to take any papers or records belonging to that office?

"A. No, sir.

"Q. Did you know that you had?

"A. No; I did not know that I had the papers in the case, because Walseth [his attorney] had a copy of the mortgage, and the complaint he brought with him.

"Q. There were a good many papers?

"A. Yes; a good many papers.

"Q. (Papers handed to witness.)   State whether or not that is the complaint you refer to.

"A. Yes; that is the complaint.

"Q. Had it ever been filed?

"A. No, sir.

"Q. Had it been delivered to the justice?

"A. Yes; it was handed to him when we went there first.

"Q. And then handed back?

"A. Yes; handed back with the other papers.

"Q. Is this the receipt you refer to, for money paid by you at that time?

"A. Yes; for the justice's fees. (The two papers offered in evidence, marked Exhibits 'A' and 'B,' received without objection. Exhibit A was a receipt for money, signed by M. A. Lee. Exhibit B was a complaint consisting of two sheets of legal cap, not signed by any person, not verified, and without any filing or indorsement.)"

After the close of the evidence, the following appears in the settled case: "Counsel for the defendant, in arguing the case to the jury, refers to Exhibits A and B, and comments on them, illustrating to the jury that it would be probable that with so many papers, that were not records of the court, but there handed to defendant, the bond might have been taken without defendant having any knowledge of the fact that it was with the papers. Here the court stops him, and rules that he has no right to comment on Exhibits A and B, that they are not properly in evidence. Here the stenographer stated: 'Mr. Montague handed in those papers, and said, "I offer these papers in evidence," and I marked them Exhibits "A" and "B." ' The county attorney remarked: 'I remember the receipt, Exhibit A, being offered.' The court here remarked: 'If they were put in, it was done surreptitiously.' Counsel for defendant here excepted to the interruption and language and ruling of the court." We are of the opinion that the exception is well taken; that it was prejudicial error for the court, after these papers were admitted in evidence, as they appear by the record to have been, to make such a charge against the attorney in the presence of the jury, and, by his ruling, exclude evidence which appears to have been competent.

It appears by the evidence that, when the justice of the peace discovered that the bond was missing from his records, he wrote to this defendant, demanding that he return it. Defendant admits that he received the letter, but did not either answer it or return the bond, though he had it in his possession. In charging the jury, the court gave defendant's second request, and modified it as follows: " '(2) If you find that the taking or obtaining the bond by the defendant was not an unlawful taking, no subsequent act of his, such as a failure to return the bond, would be sufficient to constitute the offense charged in the indictment.' This the court gives, with the further addition

that, if the taking was wrongful,—that is, taken with intent to do wrong,—then the failure to return it, when called upon by the justice, was simply a recurrence of the wrong, adding insult to injury." The exception to this modification of the request is also well taken. The judge might well have told the jury that the refusal of defendant to return the bond might be considered by them in determining the intent with which he originally took the bond, but he charged nothing of the kind, and the language used was calculated unduly to prejudice the jury against the defendant.

For these errors, a new trial must be granted. We find no other error in the record. Defendant's third request was fully covered by the general charge.

The order appealed from is reversed, and a new trial granted.