STATE v. FRED JENSEN.[1]

January 20, 1922.

No. 22,372.

Witness—laying foundation for impeachment of adverse witness.

1. The rule that, to lay a foundation for the impeachment of an adverse witness by showing contradictory statements out of court, the attention of the witness must be directed to the time and place of such statements, is not to be given an unduly technical application. It was too strictly applied under the circumstances set out in the opinion.

[1]Reported in 186 N. W. 581.

**Rape—cross-examination of prosecutrix.**

2. Much latitude in the cross-examination of the prosecutrix should be allowed in the trial of a man charged with rape.

**Rebuke of defendant's counsel prejudicial.**

3. The rebuke of defendant's counsel for asking a witness for the state a seemingly impertinent question was unduly severe and prejudicial to the defendant.

**Discrediting an unfriendly witness.**

4. A party calling a witness, when disappointed by his testimony, may not cross-examine him in an attempt to discredit him, without a showing that the witness had previously stated he would testify to facts contrary to those to which he testified when called.

Defendant was indicted by the grand jury of Blue Earth county charged with the crime of carnal knowledge of a female child under the age of 18 years, tried in the district court for that county before Comstock, J., and a jury, and found guilty as charged in the indictment. From an order denying his motion for a new trial, and from the judgment, defendant appealed. Reversed.

*Ivan Bowen* and *S. B. Wilson,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Charles E. Phillips,* County Attorney, for respondent.

Lees, C.

Defendant was indicted for the crime of having carnal knowledge of a girl under the age of 18 years. The same girl was prosecutrix in State v. Morehart, 149 Minn. 432, 183 N. W. 960, and State v. Swan, 151 Minn. 215, 186 N. W. 581. Defendant was convicted and appeals from an order denying his motion for a new trial and, separately, from the judgment of conviction. There are 59 assignments of error. We discuss only those upon which appellant principally relies.

1. The prosecutrix testified that she made defendant's acquaintance when she visited Mankato for a day or two early in September, 1920; that she returned to Mankato on or about Thursday, Septem-

ber 23, immediately took a room on the third floor of a building referred to as the Nash garage, and on the following Monday obtained employment in a restaurant. She further testified that during the evening of Saturday, September 25, she met the defendant on the street and went with him to her room, where the offense was committed and where he spent the night with her. The defendant denied the charge. A young man named Clifford Lang had been tried at the same term of court on a similar charge made by the same girl. Attached to an affidavit of defendant's attorney used on the motion for a new trial, but not made part of the settled case, is a purported copy of the court reporter's minutes in the Lang case. According to this the prosecutrix testified that while rooming over the Nash garage she went with Lang on a Saturday night to another building and spent part of the night with him there, and fixed the date as the night of October 1. The proprietors of the rooming house testified that the girl came there on Friday, September 30, and remained a week. The proprietor of the restaurant where she worked testified that he employed her for five days during the first week of October. On her cross-examination the girl was asked the following questions referring to the date of the offense charged:

Q. Were you with any young man on that night?

Q. Now the time that you claim you were with Jensen in the Nash garage, was it before or after you claim that you were with Clifford Lang?

Q. Did you see Clifford Lang on or about the first day of October?

Objections to these questions were sustained. Defendant's counsel stated that he proposed to bring out by cross-examination that on the date the girl swore she stayed with defendant she had already sworn in the other case she stayed with Lang. An objection that this would not be proper cross-examination was sustained. Later defendant offered to prove by the court reporter that in the Lang case the girl testified she was with Lang on the night of October 1, 1920. This was objected to and the objection sustained.

One of the important questions was whether the girl told the truth when she testified that defendant spent Saturday night, September 25, with her in her room over the Nash garage. She may have been mistaken as to the date of her arrival in Mankato and as to the date when she engaged her room. It may be that she came on the fifth instead of the fourth Thursday in September. If she lived over the Nash garage but one week beginning September 30, and if she spent all or a portion of the night of October 1 with Lang in another building, that circumstance would tend to refute her testimony respecting the vital issue in the case. We have not overlooked the state's contention that to lay a foundation for impeachment by showing contradictory statements the witness' attention should be directed to the nature of such statements, and the time when and place where they were made. The necessity of thus laying a foundation was referred to in State v. Hoyt, 13 Minn. 125 (132) and Heydman v. Red Wing Brick Co. 112 Minn. 158, 127 N. W. 561, but an unduly technical application of the rule was disapproved in Johnson v. Young, 127 Minn. 462, 149 N. W. 940. In our opinion the defendant should have been permitted to proceed with the cross-examination far enough to lay a foundation for the impeachment of the prosecutrix.

There is another reason why the questions should have been allowed. The rule is that a man charged with an offense of this nature is entitled to much latitude in the cross-examination of the prosecutrix. State v. Trocke, 127 Minn. 485, 149 N. W. 944; State v. Sandquist, 146 Minn. 322, 178 N. W. 883; State v. Jouppis, 147 Minn. 87, 179 N. W. 678. The questions, if answered, might have elicited facts tending to disprove the statements of the prosecutrix in her examination in chief. This would not be impeaching evidence and required no foundation to be laid for its introduction. It would not show contrary statements, but acts demonstrating that her testimony as to the time, place and circumstances of the alleged offense was untrue. State v. Connelly, 57 Minn. 482, 59 N. W. 479. It follows that the cross-examination was proper, even though it be conceded that the questions were not correctly framed to lay a foundation for impeachment.

2. The girl's father was called as a witness and testified that she was 17 on February 1, 1921. On his cross-examination he was asked if he was her father and answered that he was. This question followed: "Q. You are sure of that now?" There was an objection on the ground that the question was not a proper one. The court said:

"Not only improper, but it is reprehensible. That would be very dangerous for counsel if I were a witness being examined in that manner. Exception may be given to counsel to the statement made by the court."

Defendant's counsel then stated that he was seeking to show that the witness had theretofore testified that he was supposed to be the girl's father, and his testimony was such as to cast doubt upon his belief as to that, but the objection was sustained. It is urged that the remark of the court was prejudicial to defendant. In asking the question, counsel evidently had in mind the testimony given by the witness in another case. It does not appear that an insult to the witness was intended. The rebuke administered to counsel was unduly severe. Evidently the court regarded the question as an impertinent one. Defendant was not harmed because it was ruled out. But the intimation from the bench that it would be dangerous for counsel to ask such a question if the judge were in the place of the witness was harmful. The use by the trial judge in the presence of the jury, of language which tends to bring an attorney in the case into contempt before the jury has been held a sufficient ground for setting aside the verdict. McDuff v. Detroit E. J. Co. 84 Mich. 1, 47 N. W. 671, 22 Am. St. 673; State v. Phillips, 59 Wash. 252, 108 Pac. 1047. It is apparent from what was said in State v. English, 62 Minn. 402, 64 N. W. 1136, that this court has been inclined to take the same view.

3. The prosecutrix testified that she rode in an automobile with the defendant and others several times, and that another girl, whom she named, was with them on one or more of these occasions. This the defendant denied. The state subpoenaed the girl whose name had been given, placed her on the witness stand and asked her whether she had ever ridden or been in an automobile with the

defendant and the prosecutrix. She answered "no", and the trial was suspended for a few minutes. When it was resumed, the county attorney recalled the witness and, after some preliminary questions, stated that he proposed to show by her that during the recess she had said to the prosecutrix that the latter was trying to make trouble for the defendant and that she (the witness) was on his side and would not say anything against him. There was an objection. The court asked if the witness was under subpoena by the state, and, being told that she was, overruled the objection. The witness denied that she had made the alleged statement, and was then asked: "What did you say?" An objection was overruled and she answered: "What did I say? She said to me, why she wanted to get Fred Jensen into trouble was, that revenge was the cause." The prosecutrix was not recalled to deny this. The witness was then asked if she had not told the deputy sheriff who subpoenaed her that she was "on the other side." An objection was overruled and she answered: "I told him I wouldn't say anything against either side. I knew nothing about it." Defendant moved to strike out this testimony and the motion was denied. The deputy sheriff was then called, and, over objection, testified that on the way to the court house with the witness she said to him she couldn't see why Fred Jensen would want to subpoena her, and wanted to know if she could talk to Jensen's lawyer before she got to the court house—that she was for Fred Jensen and wouldn't say anything that would hurt him. A motion to strike out this testimony was denied.

No suggestion was made to the court that the county attorney was taken by surprise by the original testimony of the witness. If it was true, testimony of the prosecutrix on a material matter was false. Defendant was entitled to the benefit of this testimony, but any weight the jury might have attached to it was pretty effectually destroyed by the cross-examination and the testimony of the deputy sheriff. A party calling a witness may not turn on him when disappointed by his testimony and cross-examine him in an attempt to discredit him, without some showing that the witness had previously stated he would testify to certain facts, but, when

called, testified to something entirely different. When such a showing is made, a party may impeach his own witness by proving a contradictory statement made out of court. Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. 349. There is nothing in the record to indicate that the witness had informed the county attorney that she would corroborate the prosecutrix on the point to which his question was directed. But, even if she had, the proper practice was not followed in impeaching her.

We are not disposed to look with favor upon a rigid adherence to a rule of evidence which protects a witness against attack, when he makes one statement out of court and another and inconsistent one from the witness stand and both relate to the issues on trial. But we are unable to give our approval to the course followed in the present instance. If the witness had said out of court that she had seen or been with the defendant and the prosecutrix when they were together in an automobile, it might have been proper to impeach her by proving that fact. But the proof could go no farther. It was not proper to cross-examine her, as though she had been a witness for the defendant when giving her testimony. Neither was it proper to contradict her on a collateral matter by the testimony of the deputy sheriff. The natural inference from the evidence erroneously received was that, if the state's witness had told the truth, she would have corroborated the prosecutrix, and that she had been influenced by the defendant to contradict her. Defendant was not only deprived of the benefit of her testimony, but, in addition, the impression must have been left with the jury that the story of the prosecutrix in this particular was true and his denial false.

We are averse to granting new trials for technical errors, unless the substantial rights of the accused have been disregarded, and it is reasonably clear that he has not had a fair trial. "The holdings of this court do not discourage a vigorous prosecution—they disapprove an unfair one." State v. Friend, 151 Minn. 138, 141, 186 N. W. 241. When a man is charged with an odious crime, the trial judge should safeguard his right to a fair trial by doing everything that caution may suggest to remove the subtle prejudice which is apt to confront the accused at the threshold of the courtroom. State v.

Connelly, supra; State v. Dolliver, 150 Minn. 155, 184 N. W. 848; People v. Davey, 179 N. Y. 345, 72 N. E. 244. Because of the errors referred to, we are of the opinion that defendant did not have a fair trial.

The judgment is reversed and a new trial granted.