## STATE v. WILLIAM WITT.[1]

November 28, 1924.

No. 24,335.

**Conviction for arson sustained.**
    1. The evidence sustains the verdict finding the defendant guilty of arson in the third degree.

**Denial of new trial correct.**
    2. There was no error in denying a new trial upon the ground of newly discovered evidence.

Defendant was indicted with another by the grand jury of Dodge county charged with the crime of arson in the second degree, tried separately in the district court for that county before Senn, J., and a jury which returned a verdict of guilty of arson in the third degree. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*A. M. Cary* and *J. J. McCaughey*, for appellant.

*Clifford L. Hilton*, Attorney General, *G. A. Youngquist*, Assistant Attorney General, and *John Swendiman, Jr.*, County Attorney, for respondent.

    [1]Reported in 200 N. W. 933.

DIBELL, J.

The defendant, William Witt, and his son Lawrence F. Witt were jointly indicted for the crime of arson in the second degree. On a separate trial the defendant was convicted of arson in the third degree and appeals from the order denying his motion for a new trial.

There are two questions:

(1) Whether the evidence sustains the verdict.

(2) Whether there was error in denying the defendant's motion for a new trial based upon the ground of newly discovered evidence.

1. The defendant lived with his family in Dodge Center, in Dodge county. His son Lawrence conducted a pool room in the village and in connection with it sold soft drinks ,cigars, candies, and at times lunches. On the morning of the third day of October, 1922, the building was burned by a fire starting inside. For setting the fire the defendant and his son were indicted, and the defendant was convicted at the April, 1923, term of the court.

The poolroom business had been failing for some time. The stock was depleted. Shortly before the fire some, not much, of the stock had been shipped away. No stock apparently had been added recently. There had been unavailing efforts, in which the defendant participated, to sell the property, and some talk of closing the business. There was over-insurance. Some was taken out on the stock a few days before the fire.

Lawrence purchased the pool room in 1920. To make the purchase he borrowed $1,600 from a bank. The defendant paid the loan in September, 1921, and Lawrence gave him a note. On July 22, 1922, he gave him a mortgage on the pool room fixtures as security.

In the evening of October 2, 1922, the defendant purchased four gallons of high grade kerosene at a store near the pool-room which he did not usually patronize. There is evidence that the 5-gallon can was in the pool room shortly before, though the defendant claims he took it from his home. He claims that he took the kerosene to his home in his automobile and put it in the woodshed.

After the fire the can was found in the back part of the pool room with a small part of the four gallons left. His explanation is that members of his family told him in the morning of October 2 that they needed some kerosene at the house. Ordinarily the members of the family bought the kerosene at a place just across the street from their home. Low grade oil was used. It was not usual for the defendant himself to get it. He claims that he forgot to buy it in the morning and at night bought it at a place near the pool hall, took it home, and returned to the pool hall. The can ordinarily used was a 3-gallon can. The theory of the state is that the 5-gallon can which was purchased on the evening of the second was never taken to the defendant's home, or, if taken, was returned. Kerosene was not used in the pool room. There is no satisfactory explanation of the innocent presence of the 5-gallon can. Members of his family who might corroborate the defendant were not called. Lawrence, though about the streets as late as one in the morning, did not testify.

All concerned in the commission of a crime are principals. G. S. 1913, § 8477. To sustain the defendant's conviction, proof that he set the fire is not essential. It is enough that he counseled or planned or abetted or participated in its setting. It was not necessary that he be about when it was set.

The fire started suddenly. The glass front of the pool room was blown out. The building was a mass of flames inside from end to end. Everything was scorched. The back door was unlocked when the volunteer fire department came.

There is no evidence of the odor of kerosene about the place. There is a suggestion that the fire may have been occasioned by defective electric wiring. There is evidence that the wiring was old and not good. This was a circumstance.

The defendant kept a few cows and sold milk in the village. He owned a 200-acre farm a few miles out. It may be inferred that he was a man of some property. When not engaged in his milk business he stayed at the pool room and helped or himself conducted the business. He was 54 years old. There was evidence in support of his good character and none opposed to it. He was

under no pressing need. It is well enough argued that such a man under such circumstances would not participate in the commission of such a crime. It is well enough argued that he would not buy kerosene openly as he did and participate in using it in burning the property with so great a chance of detection. Each argument was for the jury. Like arguments could have been made in State v. O'Hagan, 124 Minn. 58, 144 N. W. 410.

The evidence is meager. It may be that all the pertinent facts· have not been disclosed. Quite likely the whole story has not been told. The case was tried entirely fairly to the defendant. The charge of the court covered the questions at issue. It was not unfavorable to the defendant. It is not claimed that there was error, or that the defendant was not accorded fair treatment. The memorandum attached to the order denying a new trial expresses the trial court's approval of the 'verdict. It could 'have granted a new trial, as a matter of discretion, and should have done so if it thought that in the interests of justice another jury should review the evidence. The members of the court feel that if they were trying the case, with the record as it comes to them in print, they would, with nothing else to aid or guide, in the exercise of their discretion, grant a new trial. This does not mean that 'the trial judge was in error. He had more than the printed record brings to us. He saw the witnesses and participated in the conduct of the trial and is in a far better situation than this court to determine the justice of the result. When the jury returned a verdict of guilty the responsibility was upon the trial judge, and we do not criticize the conclusion he reached. The evidence sustains a 'finding of the corpus delicti and of the defendant's connection with the commission of the crime.

2. One ground of the motion for a new trial is newly discovered evidence.

It is proposed to offer an additional witness upon the question of value. There was no diligence and the character of the evidence proposed is not such as to require a new trial.

Another claim of newly discovered evidence is based on the affidavits of the 12 jurors who tried and acquitted Lawrence F. Witt at

the October, 1923, term, and of 16 others on the jury panel who were spectators at the trial and heard the evidence, each to the effect "that from the evidence offered and received at said trial affiant was of the opinion that there was serious doubt as to whether the fire was of incendiary origin and that there was grave probability that it might have accidentally started from defective electric wiring." Another affidavit states that Lawrence was acquitted on the first ballot.

If a new trial were granted no one of these 28 affiants could testify to the fact to which he deposes in his affidavit, nor could the affiant who deposes to an acquittal on the first ballot testify to the fact. The only effect of the affidavits is to get before the court the fact that Lawrence, jointly indicted with his father whose conviction is for review, was subsequently acquitted on the first ballot; and the fact that 12 jurors and 16 spectators have grave doubt of the sufficient proof of the corpus delicti—facts which should not influence the trial court nor this court in determining the sufficiency of the evidence. See State v. Schomaker, 149 Minn. 141, 182 N. W. 957.

Order affirmed.

STONE, J. (concurs in result.)

I concur in the result and all of the opinion except the portion indicating that a new trial might have been desirable. It is a case where the demeanor of defendant on the witness stand might have had much to do with the result, and the action of the trial judge ought not to be subjected to any adverse observations here.

QUINN, J. (dissenting.)

I dissent. The defendant is about 58 years of age, born in a foreign land; he came to America when a small boy, and now owns a farm of 200 acres in Dodge county, the fruit of his own labor and economy. Upon this farm he resided for over a quarter of a century. His wife died a number of years since, leaving him with five children to care for, of whom Lawrence is the oldest.

Three years before this trial he moved to Dodge Center, procured a little home where he kept a few chickens and cows, selling milk and eggs. Lawrence operated a pool-hall. The defendant assisted him somewhat in attending it. There were 5 pool tables and the usual equipment in connection therewith. In September, 1921, the father loaned Lawrence $1,600, taking his note, payable in 5 years. In July, 1922, the son gave his father a mortgage upon the pool tables and equipment to secure payment of the note. At that time the son carried insurance against fire, to the extent of $600 on the pool tables and equipment, and an additional $600 on the stock of goods such as soft drinks, cigars, canned goods and the like. The policy was dated January 21, 1921, and it was renewed for the year 1922. It was payable to the son in case of loss. There was no assignment or mortgage clause in connection therewith. Shortly prior to the fire, the son procured $1,300 further insurance on his stock of goods.

The value of the articles covered by the mortgage was in excess of the debt owing to the father, while the amount carried on the stock was far in excess of its value. The fire occurred between one and two o'clock in the night. Mr. Whitney was called as a witness by the prosecution and testified, in effect, that he owned the brick building adjoining the one in which the fire occurred; that there was a joint brick wall, one foot thick, between the two buildings; that he and his wife were sleeping on the second floor of his building near a window, next to the wall; that, in the night, he heard something fall, but did not open his eyes, and in a few minutes he heard another crash on the sidewalk, the glass falling out; that the blaze was right up in his window; that he woke his wife, grabbed his clothes and went to the phone and gave alarm; that it was then 2:20 o'clock. The noises were about ten minutes apart. It was an old building, erected nearly a half century before. It had been used as a garage and for moving pictures and had been wired for electric lights a number of years before.

At the trial the defendant's neighbors, ten in number—bankers, county officials, ex-members of the legislature, farmers and old neighbors—who had known him from 15 to 40 years, testified that

he always bore a good reputation for truth, veracity and as a law abiding citizen, in the community where he lived. No witness was called by the prosecution to controvert this issue. The silence on the part of the state, in this regard, may well be taken as an admission of the truth of the good character of the accused. The testimony offered by the prosecution was wholly circumstantial. While it is not essential that issuable facts should be proven by direct evidence, yet it is an invariable rule that it must be of such character as to exclude every reasonable hypothesis, other than that the accused is guilty. It is not enough to show that the alleged facts and circumstances are true, but they must be such facts and circumstances as are incompatible, upon any reasonable hypothesis, with the innocence of the accused, and incapable of explanation, upon any reasonable hypothesis, other than that of the guilt of the accused. 1 Greenleaf, Ev. § 12. In other words, the circumstances must not only all be in harmoney with the guilt of the accused, but they must be of such character that they cannot reasonably be true, in the ordinary nature of things, and the defendant be innocent. Com. v. Goodwin, 14 Gray (Mass.) 55; Beavers v. State, 58 Ind. 530; Black v. State, 1 Tex. App. 368.

There are two theories as to the origin of the fire more probable to my mind than that the defendant set the fire. The building was at best an old fire trap, the wiring for lights not having been properly done, judging from the uncontroverted testimony. Mr. Whitney heard a noise as of a heavy fall; ten minutes later the glass front crashed onto the sidewalk. The pool tables were not consumed in the conflagration, indicating very strongly that the fire started near the ceiling, probably from the wiring, rather than from an incendiary motive. Again, it may be said that, judging from the view point of motive, it can more readily be seen where a much more likely and stronger motive lay, if the fire was of an incendiary origin. The defendant owned no interest in the stock, nor was there any insurance in his favor on the pool tables and equipment. Besides, the property covered by his mortgage was amply sufficient to secure the payment of his loan. In arriving at this conclusion, we have not overlooked defendant's procuring a can of kerosene

which after the fire, had partly disappeared, either by evaporation or by being poured from the can. No claim is made that there existed any kerosene odor about the premises at the time of the fire, which seems to emphasize the probability of evaporation quite as strongly as that the defendant was guilty of the crime with which he stands charged. I think there should be a new trial.