STATE v. JAMES MANCINO.

102 N. W. (2d) 504.

April 14, 1960—No. 37,733.

*James Malcolm Williams* and *David W. Nord,* for appellant.

*Miles Lord,* Attorney General, *George M. Scott,* County Attorney, *Bruce C. Stone,* First Assistant County Attorney, and *Per M. Larson,* Assistant County Attorney, for respondent.

DELL, CHIEF JUSTICE.

Upon an information by the county attorney of Hennepin County, defendant, James Mancino, was tried and convicted of grand larceny in the first degree. The information in part specified the following:

"The said James Mancino on or about the 21st day of November, A. D. 1957, at the City of Minneapolis in said Hennepin County, Minnesota, then and there being, did wilfully, unlawfully, wrongfully, knowingly and feloniously, take, steal and carry away from the possession of Munsingwear, Inc., a corporation * * * four hundred sixteen shirts (416) described as to quantity, style and value as follows, to-wit:

"[Description of the shirts by number, style, and value.]
"all of the total and aggregate value of Two Thousand, Two Hundred Thirty Five and 02/100 Dollars ($2,235.02), * * * with intent * * * to deprive the said Munsingwear, Inc., a corporation * * * of its said property, and to appropriate the same to the use of * * * said James Mancino, contrary to the statute * * *."

The trial court's charge to the jury included the following:

"I am only going to read to you the portions of the statutes that apply to the particular charge that is made against this defendant. * * *

* * * * *

" 'Sec. 622.01. * * * Every person who, with intent to deprive or defraud the true owner of his property * * * or to appropriate the same to the use of the taker, or of any other person:

" 'Shall take from the possession of the true owner, *or of any other person,* * * * or appropriate to his own use, or that of any person other than the true owner, money, personal property * * * or article of value of any kind—

" '*Steals such property,* and *shall be guilty of larceny.*' [Italics supplied.]

* * * * *

" 'Every person who shall steal or unlawfully obtain or appropriate in any manner specified in this chapter [M. S. A. 622.05]:

" 'Property of the value of more than $500 in any manner whatsoever—

" 'Shall be guilty of grand larceny in the first degree.'

* * * * *

"The essential elements of grand larceny as charged against this defendant are that property in excess of $500 in value was taken from the possession of the Munsingwear Company and that even though the defendant was not present when the property was physically taken from the Munsingwear building, that the defendant participated in the theft by assisting in its transportation out of the county and also by disposing of it and selling a part of it to Walter Engle, at Rockford, Minnesota, and that all of this was done with the intent in the mind of the defendant to appropriate said property to his own use and to deprive the true owner of that property.

\* \* \* \* \*

"It is necessary in order that you find the defendant guilty that the State shall prove that certain property of more than $500 value was taken from the Munsingwear building, and that it was taken with the intention on the part of the takers, including this defendant, to deprive the Munsingwear Company of its property and to appropriate it to the use of this defendant or some other persons."

Subsequently, the jury returned for further instructions, and the following took place:

"The Foreman: \* \* \* We are in doubt about your instructions as to whether to consider for our verdict on what is actually in the Information or on all sections that you stated, whether these sections apply or not to our consideration of the verdict."

The court thereupon reread the instructions above set forth, and then the following took place:

The court: "Does that help? Any further questions?

"The Foreman: I have no further questions.

"Mr. Williams [counsel for defendant]: I would like the record to show the objection to the charge as originally given and the objection to be further noted that the Court took particular sections of the charge out of context when the whole charge should be reread based on the general question put by the jury."

From the judgment subsequently entered, this appeal is taken. Upon appeal defendant claims error in the trial in that:

(1)   Under the information filed, which charged that defendant did "steal and carry away" certain property, the state was not authorized to prove that he had committed grand larceny in some other statutory manner;

(2)   The evidence fails to support a finding that he took the goods from Munsingwear, Inc., or aided or abetted or procured someone else to do so; or that he took or received such stolen goods in Hennepin County and transported them to Wright County;

(3)   The court erred—

(a)   in restricting defendant's cross-examination of Ralph W. Lange, employee of a private investigator employed by Munsingwear, Inc.;

(b)   in referring to an endorsement on a certain check as that of defendant when there had been no testimony to such effect;

(c)   in stating "And your man was in with him" in referring to a statement by defendant's counsel that a witness had admitted taking a large stock of merchandise from Munsingwear, Inc.

The evidence submitted indicates the following: On December 31, 1957, Munsingwear, Inc., discovered that about $30,000 worth of merchandise, mostly shirts, had disappeared from its warehouse in Minneapolis. Fred H. Huddleson, who was employed by Munsingwear during the time when this merchandise disappeared, later confessed that he had removed part of it from the Munsingwear warehouse. At defendant's trial he testified that in September or October of 1957 he met defendant and Marland Pettis, another Munsingwear employee, and rode with them from Minneapolis to Rockford in Wright County in a 1957 station wagon which belonged to Pettis; that he then observed a large carton in this car and in defendant's presence asked Pettis what was in it; that he was then advised by Pettis that "there was stuff from Munsingwear"; that when they arrived at Rockford defendant took the carton into a beer tavern there while he and Pettis remained in the car; that defendant stayed inside about 15 or 20 minutes and then returned to the car without the carton; that he next saw defendant and Pettis about Christmas of 1957 when defendant had asked him what he had told the police department and the

Busch Detective Agency about the carton and had warned him that if he "said anything about this stuff" at Rockford "they would get even" and would say that he had helped them remove this and other merchandise from the Munsingwear plant.

Robert James Gittins testified that he was present in the "Village Barn," a tavern in Rockford, on the evening of November 20, 1957, when defendant, with another man, came in and talked to Walter Engle, the proprietor; that defendant then went outside and returned with two cartons marked "Munsingwear" similar in size and shape and appearance to two cartons present in the courtroom; that defendant and Engle then took the cartons to a rear room and when they came back Engle wrote out and handed two checks to defendant; that the two checks, exhibits B and C, drawn to "Cash" on the Rockford State Bank by Walter S. Engle, one of which was endorsed by defendant, were similar in appearance to such checks; and that on the next day he observed a number of "Munsingwear" shirts on sale in the "Village Barn."

Willard Walter Lindquist, vice president and cashier of the Rockford State Bank, testified that Engle was a depositor of the bank and identified Engle's signature on exhibits B and C. The name James C. Mancino was written on the back of exhibit B. Both exhibits B and C were offered in evidence, and the following then occurred:

"Mr. Williams [counsel for defendant]: Improper foundation. They are immaterial, and improper foundation.

"The Court: I will receive the one with the endorsement on the back, the written endorsement on the back [exhibit B].

"Mr. Williams: By whom?

"The Court: James Mancino.

"Mr. Williams: There has been no identification of his signature and I move for a mistrial on the ground that the Court has testified.

"The Court: The motion is denied and I will receive the check with the signature of James Mancino and I will reserve my ruling on the other one."

Mr. Lindquist likewise identified state's exhibit G, a check dated

October 8, 1957, drawn on the Rockford State Bank on the account of Walter S. Engle, payable to the George Cork Distributing Company, on the back of which appeared endorsements by George Cork Distributing Company, Schullo's Liquor Store, and Jim Mancino. This check was not offered at that time.

Charles Wetherille, inspector of detectives for Minneapolis, testified that on February 5, 1958, he interviewed defendant and exhibited to him three checks, exhibits B, C, and G, and asked him from whom they were received; that defendant replied that he had received them from Walter Engle, and admitted that he had cashed and received the proceeds of all of such checks, including the one payable to George Cork Distributing Company; that the endorsements of his name on the back of certain of the checks were signed by him; and that the checks had been given to him in payment for four boxes of Munsingwear shirts. Thereafter, exhibits C and G were offered and received in evidence over defendant's objection as to foundation and materiality.

Ralph W. Lange, an employee of Busch Detective Agency, was subpoenaed by defendant with directions to produce all files relating to the loss at Munsingwear, Inc. Vernon J. Schweiger appeared as counsel for Busch Detective Agency and Mr. Lange. The following took place:

"Mr. Williams: The defendant offers to prove that this witness, working for and on behalf of the Busch Detective Agency, Incorporated, licensed in the State of Minnesota, has knowledge which will prove conclusively, has information which would conclusively show that any material taken from the possession of the Munsingwear, Incorporated, was not taken by Mr. Mancino but was rather taken by Mr. Pettis and/or Mr. Huddleson, confessed felons.

"Mr. Larson: We object to it again as immaterial and incompetent in this case, and no materiality has been shown in the matter involved here.

"Mr. Schweiger: I object to it as attorney for the Busch Detective Agency and Ralph Lange and claim privilege.

"The Court: Claiming privilege under the statute—

"Mr. Schweiger: 326.336.[1]

"The Court: All right. I will sustain the objection now.

"Mr. Williams: On what ground?

"The Court: On both grounds, on materiality and privilege."

Robert J. Hodge, an employee of Munsingwear, Inc., was called as an adverse witness by defendant, and the following occurred:

"Q. Well, now, sir, you knew and you know now, based on your knowledge as chief of plant security, that it was necessary to take the amount of goods that you had in this warehouse * * * which was stolen, over a long period of time, isn't that true, that is a probable conclusion from the evidence you have, isn't that true?

\* \* \* \* \*

"The Court: * * * You are talking about the $30,000 theft taking place in a short period of time.

"Mr. Williams: You bet.

\* \* \* \* \*

"The Court: Yes, but you talked about ten thousand shirts.

"Mr. Williams: Well, if the man pleads guilty to $449.00 by agreement with the County Attorney's office, and comes in here on cross-examination and admits having taken * * * three thousand, almost four thousand dollars worth—it is a fair conclusion he took all of it.

"The Court: And your man was in with him.

"Mr. Williams: I move for mistrial on the grounds of the judge's expressing personal opinion.

"The Court: I am not expressing an opinion. You are drawing conclusions. All right, go ahead with your testimony."

■ We are of the opinion that the information under which de-

---

[1]M. S. A. 326.336 provides in part: "* * * No employee of any licensee shall divulge to anyone other than his employer, or as his employer shall direct, except as he may be required by law, any information acquired by him during such employment in respect of any matter or investigation undertaken or done by such employer."

fendant was tried was sufficiently definite to put him upon notice as to the offense with which he was charged and to enable him to properly answer and defend against it. The principles and statutory provisions applicable to indictments apply equally to informations. M. S. A. 628.29, 628.30. Statutory tests for the sufficiency of the former are set forth in § 628.18,[2] while § 628.19 provides that no indictment shall be deemed insufficient by reason of a defect in matter of form which does not tend to prejudice the substantial rights of the defendant upon the merits. These statutory requirements give expression to well-established common-law principles summarized in 27 Am. Jur., Indictments and Informations, § 51, as follows:

"* * * an indictment which is otherwise sufficient is not defeated by the fact that it is inartfully drawn or awkwardly worded, contains surplusage, and is disorderly in the arrangement of its allegations. This liberal tendency extends to informations, which are to be tested as regards the substantial nature and description of offenses and the mode of setting out the criminal charges by the same rules applicable to indictments."

---

[2]M. S. A. 628.18 provides: "The indictment shall be sufficient if it can be understood therefrom:

"(1) That it is entitled in a court having authority to receive it, though the name of the court is not accurately stated;

"(2) That it was found by a grand jury of the county in which the court was held;

"(3) That the defendant is named, or, if his name cannot be discovered, that he is described by a fictitious name, with the statement that he has refused to discover his real name;

"(4) That the offense was committed at some place within the jurisdiction of the court, except where, as provided by law, the act, though done without the local jurisdiction of the county, is triable therein;

"(5) That the offense was committed at some time prior to the time of finding the indictment;

"(6) That the act or omission charged as the offense is clearly and distinctly set forth, in ordinary and concise language, without repetition;

"(7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case."

See, State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A. (N.S.) 244; State v. Jatal, 152 Minn. 262, 188 N. W. 284; State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409.

■ The information here challenged appears to meet the above requirements. It charges that defendant willfully, unlawfully, knowingly, and feloniously took and carried away from the possession of Munsingwear, Inc., in Minneapolis, Hennepin County, 416 shirts which are specifically described therein. Likewise, the value thereof is set forth at $2,235 and it is alleged therein that such merchandise was taken by defendant with the intent of appropriating the same to his own use. Accordingly, there can be little question but that defendant was made aware that he was charged with feloniously taking personal property of the kind and value described which belonged to Munsingwear, Inc. Under § 622.01 it is not essential that the person charged with larceny actually take the property involved *from the possession of the true owner*. This section defines larceny as unlawfully taking personal property from "the possession of the true owner, *or of any other person*" (italics supplied) with intent to defraud the owner or appropriate the property to the use of the taker. Section 622.05 specifies that if the value of such property exceeds $500 the crime shall be grand larceny in the first degree. Here the evidence was sufficient to sustain a finding that defendant received the property knowing it to have been stolen from Munsingwear, Inc., with the intention of appropriating it to his own use. We do not feel that there was such a difference between the offense described in the information and the offense proved against defendant as to render the procedure invalid, or to lead to the conclusion that because of uncertainty in the language of the information defendant was unaware of the nature of the offense with which he was charged, or was unable to properly prepare a defense against it. See, State v. Anderson, 155 Minn. 132, 192 N. W. 934; State v. McCartey, 17 Minn. 54 (76).

■ As indicated above, the evidence amply sustains a finding of defendant's guilt under the information. Here, several witnesses testified as to defendant's possession of the stolen merchandise and as to his disposal of it in Wright County. Their testimony was undisputed

and corroborated by evidence of the checks which had been delivered to defendant for the stolen merchandise. There was testimony that defendant knew that the merchandise had come from Munsingwear, Inc. There was testimony that he threatened another participant in the theft if he disclosed defendant's part therein. It cannot be doubted that a jury question was presented as to defendant's knowledge and understanding, as of the time the merchandise was delivered to him, that it had been stolen from Munsingwear, Inc., and as to whether he intended to defraud the true owner thereof and to appropriate the same to his own use. State v. Tsiolis, 202 Minn. 117, 277 N. W. 409; State v. Eggermont, 206 Minn. 274, 288 N. W. 390; State v. Witt, 161 Minn. 96, 200 N. W. 933; State v. Briggs, 122 Minn. 493, 142 N. W. 823.

■ We are of the opinion that the trial court did not abuse its discretion in rejecting the testimony of Ralph W. Lange as to the results of an investigation of the theft by Busch Detective Agency. M. S. A. 326.336 prohibits employees of licensed detective agencies from divulging information as to matters investigated by such agencies, except where required by law. Here nothing was submitted to indicate that Lange's testimony would fall within the exception noted. Likewise, it appears that such evidence would have been immaterial in so far as the issues are concerned. It was intended to show that defendant did not actually remove the stolen merchandise from the Munsingwear plant. But the state did not contend that defendant did so. It claimed that he received and appropriated it for his own use knowing it to have been stolen from Munsingwear, Inc., with intent to defraud the latter. The rejected testimony would have had no bearing on this. Accordingly, we find no error in the trial court's action in rejecting such evidence. See, Physicians & Hospitals Supply Co. v. Johnson, 231 Minn. 548, 44 N. W. (2d) 224; Newgard v. Freeland, 196 Minn. 548, 265 N. W. 425.

■ We do not find error in the court's reception of the checks identified as exhibits B, C, and G, or in the court's comment to the effect that one of such checks had been endorsed by defendant. From the testimony of Mr Wetherille it appears that defendant admitted

he had received and cashed these checks as payment for the merchandise delivered to Engle, and that where his name was endorsed on the back of any such checks the same was his signature. Obviously, such evidence was sufficient to establish a foundation for the reception of all such checks in evidence and justified the court's comments in connection therewith.

■ The trial court's statement to defendant's counsel in the presence of the jury "And your man was in with him," in referring to the fact that one of the witnesses admitted taking out part of the merchandise from the Munsingwear plant, in our opinion constituted prejudicial error. Where remarks of the court to counsel are prejudicial or prevent a fair trial, justice is best served by granting a new trial. State v. Hansen, 173 Minn. 158, 217 N. W. 146; State v. Jensen, 151 Minn. 174, 186 N. W. 581. Jurors ordinarily look for an indication as to which litigant should prevail in the attitude and remarks of the trial judge, and the latter should refrain from any word which might emphasize the personal feeling of the court. State v. English, 62 Minn. 402, 64 N. W. 1136; State v. Floyd, 61 Minn. 467, 63 N. W. 1096. This is particularly true in criminal cases where the liberty of an individual may hang upon the effect of such a remark. State v. Hutchison, 121 Minn. 405, 141 N. W. 483. There is, of course, an exception to this rule where the court is rebuking counsel for improper conduct or for interjecting improper remarks during examination of witnesses. 14 Dunnell, Dig. (3 ed.) §§ 7098, 7099. But here we cannot but feel that the court's comment above described, to which exception was taken by defendant's counsel, amounted to a definite statement by the court of its conviction that defendant was guilty of participating in the theft, a question which the jury alone should determine. Obviously, such a comment could not help but impress the jury and undoubtedly influence its decision. For this reason, in the interest of justice the case should be returned for a new trial. See, State v. Shetsky, 229 Minn. 566, 40 N. W. (2d) 337.

Reversed and new trial granted.

Mr. Justice Loevinger, not having been a member of the court at the time of the argument or submission, took no part in the consideration or decision of the case.