**STATE of Minnesota, Respondent,**

v.

**Mark John STRODTMAN, Appellant.**

**No. C1–86–974.**

Court of Appeals of Minnesota.

Jan. 20, 1987.

Review Denied March 25, 1987.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Roger S. Van Heel, Stearns Co. Atty., St. Cloud, for respondent.

John E. Mack, New London, for appellant.

Heard, considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Mark Strodtman was convicted of aiding and abetting in second degree arson and conspiracy to commit second degree arson. After presentence investigation, the trial court sentenced appellant to twenty-one months in prison, an upward departure, a fine of $2000, and restitution of $27,063.09. Strodtman asks this court to reverse and to drop the probation and fines. We affirm.

## FACTS

Appellant Strodtman was purchasing on contract for deed a one story two-bedroom home in Kimball, Minnesota. In July, 1985, appellant contacted a real estate agent who drew up a purchase agreement between appellant and a proposed purchaser. The proposed purchaser agreed to pay $45,000 for the house.

At the time of the purchase agreement, the house was encumbered with tax liens in the amount of $7000 and other liens amounting to $4000. In addition, appellant had fallen four months behind in his payments on the contract for deed that he was buying, and had other financial problems. A loan officer at appellant's bank testified that judgments against the house and the amount owing on the house would be greater than the amount appellant was going to receive, and the proposed sale price would not provide enough funds for appellant to clean up an overdraft and delinquent loan payments.

Appellant had insured the home with Bankers Standard Insurance Company. The basic policy provided coverage of $62,000 on the house. There was an additional $6200 coverage for appurtenent structures, $31,000 coverage for contents, and $12,000 coverage for loss of use or additional living expenses. The insurance adjuster testified that these figures were "basically in the ballpark," and the property was not overinsured.

On August 11, 1985, prior to closing on the sale of the house, fire damaged the house. Appellant submitted a damage claim to his insurer. The insurer estimated that the damage to the house alone would run about $17,000, and that total replace-

ment cost would be between $55,000 and $56,000.

The deputy sheriff who investigated the fire concluded the fire was incendiary. The fire occurred in three unconnected areas. Linens were stretched into the bedrooms. The deputy referred to these as "trailers" used to assist the fire's spread from point of origin to other locations in the building. He also testified that no electrical sources were found near the origins of the fires and that laboratory analysis indicated no accelerants had been used.

After investigation, a Jeff Weisen was arrested and charged for setting the fire. Weisen confessed to having started the fire. Weisen's recitation of how he set the fire was consistent with the court's findings. Weisen informed the police that Joe Spanier had hired him to start the fire. Spanier was subsequently arrested for arson on August 29, 1985. Spanier pled guilty to arson in the first degree, and subsequently pled guilty to conspiracy to commit arson in the first degree. Spanier was sentenced to one year and one day in Stillwater State Prison. Weisen pled guilty to arson in the first degree and received a twenty-six month sentence.

Spanier testified at trial that appellant had asked him to "torch" the house for insurance purposes. Spanier further admitted that, although he didn't want to set the actual fire himself, he offered to find someone to do it. Weisen testified that he and Spanier had come to an agreement according to which Weisen would burn the house down in exchange for $300 before and $300 after the fire.

Appellant Mark Strodtman was arrested on August 31, 1985. He was convicted on March 21, 1986, of aiding and abetting second degree arson and conspiracy to commit second degree arson. Appellant was sentenced to twenty-one months in prison, a fine of $200, and restitution of $27,063.09.

## ISSUES

1. Did substantial and compelling circumstances justify upward departure from sentencing guidelines?

2. Was appellant denied a fair trial?

3. Did the trial court err by refusing to permit respondent to introduce certain evidence?

## ANALYSIS

### I.

*Sentencing Departure*

Appellant complains that the twenty-one month executed sentence imposed for aiding and abetting second degree arson in violation of Minn.Stat. § 609.562 (1984) and conspiracy to commit second degree arson in violation of Minn.Stat. §§ 609.562, 609.-175 (1984) is excessive.

On appeal of a sentence, the court may determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court. * * * The court may dismiss or affirm the appeal, vacate or set aside the sentence imposed or stayed and direct entry of an appropriate sentence or order further proceedings to be had as the court may direct.

Minn.Stat. § 244.11 (1984).

Second degree arson is a severity level VI offense. According to Minnesota Sentencing Guidelines, the twenty-one month sentence, severity level VI with no prior convictions, should have been stayed. The trial court departed from the presumptive sentence by executing the sentence and sending appellant to prison for twenty-one months.

A judge should depart from the presumptive sentence established in the guidelines only when substantial and compelling circumstances exist. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). In the case of a major economic offense, identified as an illegal act or series of acts committed by concealment or guile to obtain money or property, the court may consider the presence of two or more of the

following circumstances as aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

Minnesota Sentencing Guidelines II.D. 2.b.(4).

■ Although the trial court was required to find the presence of only two of the listed aggravating factors, the court set out four factors of a major economic offense and used them as the basis for the upward departure. The court concluded that the crime represented a major economic offense with monetary loss substantially greater than that in the usual offense and substantially greater than the minimum loss specified in the statutes. The court concluded that the act was attempted to be committed by concealment and guile to obtain money and avoid loss of money and property, that the crime involved planning and sophistication by appellant and occurred over a lengthy period of time, that appellant used his friendship with Spanier to facilitate the crime, and that appellant showed a complete lack of remorse.

The "major economic offense" indicators require loss to be greater than the usual offense *or* substantially greater than the minimum loss specified in the statute.

Minnesota Sentencing Guidelines II.D. 2.b.(4)(b). Minn.Stat. § 609.562 sets out a minimum value for the property of $2500. However, there is no statutory guidance for "actual monetary loss substantially greater than the usual offense." [1]

The trial court concluded that the "act of attempting to have defendant's house burned represents a major economic offense where the actual or attempted monetary loss is substantially greater than the usual offense and substantially greater than the minimum loss specified in the statutes." The court did not indicate what it considered to be the monetary loss in the "usual offense." Neither party points to any portion of the record indicating the value of house compared to the usual damaged, unoccupied building under § 609.562.

The trial court found that appellant had planned the burning of his house over a period of one to two months. The testimony of Spanier that appellant repeatedly asked him to burn down the house and to do it in exchange for money supports this finding.

Appellant's attorney argues that appellant was not involved in an offense involving "a high degree of sophistication." Spanier hired an inept arsonist who, in his haste to pull stuffing out of beds, stabbed into a water bed. We agree with appellant that Weisner's bumbling efforts on two subsequent days could hardly be considered sophisticated. As appellant's attorney put it, "the mafia would weep."

The trial court found that appellant used his friendship with Spanier to facilitate the crime. Spanier testified that he and appellant went to school together and had "always been friends." Spanier received $600 to arrange the fire. Spanier testified that he did not want to do the job because it was too risky. When appellant asked him a second time to burn the house down, Spanier said he would not do it, but knew someone who might. There is no indication appellant's position of trust or confidence

---

**1.** The phrase "greater than the usual offense" is imprecise and not helpful.

caused Spanier to do something he would not otherwise have done.

While the stated reasons for the upward departure are marginal, we hold that the sentence imposed falls within the discretion of the trial court and was not an abuse of discretion.

## II.

*Denial of Fair Trial*

■ Appellant alleges he was denied a fair trial because the trial court consistently sustained the prosecutor's objections to questions by the defense on the basis they were leading.

Minn.R.Evid. 103(a) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

In view of the nature of the objections and appellant's failure to make an offer of proof with respect to the leading questions, the court's rulings on these matters were not improper.

■ Appellant also claims that his final argument was continually interrupted by the prosecutor's objections that defense counsel was giving his personal opinion, lacked evidence for his statements, and was misstating the law. Appellant argues that his trial counsel's leading questions, statements in closing argument such as "I believe," and minor inaccuracies in stating the evidence are the jurisprudential equivalent of "hiccups" and should not have formed the basis for the court continually sustaining objections of the prosecutor.

Appellant's attorney on appeal refers to trial counsel's [2] habit of prefacing remarks with "I think" or "I believe" to be an inconsequential personal "tic." Appellant argues that his counsel should not be punished for being less expert in using words and phrases than the prosecutor. We have reviewed this argument and do not find reversible error. The trial court cannot be criticized for sustaining proper objections. This court has held that closing arguments that inject a personal opinion on the veracity of witnesses are improper. *State v. Stokes*, 354 N.W.2d 53, 57 (Minn.Ct.App. 1984) (citing *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984)). We find no error in the record.

Appellant also claims the trial court's "misstatement of the law" denied him a fair trial. During closing argument, defense counsel informed the jury that to find appellant guilty of conspiracy, it would have to find all five elements of arson, and then apply the three elements of conspiracy. The trial court interrupted and instructed the jury that this was a misstatement of law, and that the correct law for the jury to apply would be given to them in the court's closing instructions.

■ All that need be shown for conspiracy is that defendant conspired with another to commit the crime in question, that a conspirator did an overt act, and the date and time the agreement or overt act took place. CRIM.JIG II, 5.07 (1985). The prosecution need not show that all the elements of the crime took place, since the crime itself need not be proven to prove conspiracy. The trial court properly informed the jury that it need not find all five elements of arson in order to convict appellant of conspiracy to commit arson.

■ Appellant claims that the trial court improperly showed bias when it sustained the State's objection to appellant's argument that the State relied on only one overt act, the fire, and informed the jury that the "instructions will cover a number of them." Although the jury could potentially have misunderstood the judge's statement and believed the judge was indicating the State

---

**2.** Appellant's attorney on appeal was not the attorney who represented him at trial.

had proved a number of overt acts, we find neither overt nor implied bias. It is speculation to assume that the jury misunderstood the statement to appellant's prejudice.

■ Appellant claims he was denied a fair trial by the trial judge's bias against appellant's attorney. *See Payne v. Lee*, 222 Minn. 269, 24 N.W.2d 259 (1946). In short, appellant "suspects he [the judge] was miffed." It is true that the judge should refrain from any word which might emphasize the personal feelings of the court. *State v. Mancino*, 257 Minn. 580, 591, 102 N.W.2d 504, 511 (1960). In this case, we have considered the instances of trial court bias appellant has raised and find them to be without merit.

■ Appellant speculates the court's "denigration" of trial counsel before the jury and appellant ultimately deprived appellant of effective assistance of counsel because counsel became so intimidated that he did not take proper action to protect the record. In support of this contention, appellant states that: (1.) counsel was not making objections to leading questions by prosecutor; (2.) counsel failed to move for a mistrial or to object to the court's corrections of misstatements in the law with respect to overt acts and the number of elements to be proven for conspiracy; (3.) counsel did not make clear record of objections to prosecution's misstatements of law; and (4.) counsel did not make a motion for new trial in the proper form.

> Generally, an appeal from a judgment of conviction * * * is not the most appropriate way of raising an issue concerning the effectiveness of the trial counsel's representation because we do not have the benefit of all the facts concerning why defense counsel did or did not do certain things.

*State v. Zernechel*, 304 N.W.2d 365, 367 (Minn.1981). Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

> [a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.

*Id.* at 687, 104 S.Ct. at 2064. A court reviewing a claim of ineffective assistance of counsel will initially presume counsel's conduct falls within the wide range of reasonable professional assistance. The defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (Citing *Michel v. Louisiana*, 350 U.S. 91, 100–101, 76 S.Ct. 158, 163–64, 100 L.Ed. 83 (1955).

■ With respect to the leading questions to which counsel would or should have objected, appellant gives no cites. Even in hindsight, we cannot now make for appellant the objections that may have been helpful at trial.

The decision not to move for a mistrial should be considered an aspect of trial strategy. Similarly, we find without merit appellant's contention that counsel's failure to make a full record of objections to alleged misstatements of the law with respect to insurance proceeds respondent would receive, or counsel's failure to move for a new trial, constituted ineffective assistance of counsel to the point of reversible error.

### III.

*Exclusion of Evidence*

■ Appellant contends that the trial court improperly refused to admit evidence of the lowered value of the building damaged by fire. Appellant is of the opinion that his trial counsel thought a motion for new trial was before the court when he presented the judge and opposing counsel with a letter from the Commissioner of Commerce setting out the rule that insurers have the option to fix up premises rather than pay the full amount of the policy. The letter appears to refute the State's evidence that appellant would have received at least $62,000 had the house burned to the ground. Appellant did not, however, introduce evidence of the lower value at trial. Even at sentencing, it is not clear for what purpose the letter was of-

fered to the court. The trial judge chose not to consider it. We do not find error.

Appellant also argues that the trial court erred by sustaining the State's objection to evidence of burglary of the house. Appellant's effort to admit evidence of a possible burglary was in the form of a question to the chief of police whether appellant had reported to him that the house had been burglarized. The trial court sustained the State's objection on relevancy grounds. We find no error in this ruling.

Finally, appellant argues that the trial court improperly excluded evidence of threats made against appellant by an individual who, according to appellant, committed the arson. We considered this issue and find it without merit.

## DECISION
The trial court's findings supported an upward departure from the sentencing guidelines. Appellant was not denied a fair trial by the trial court's evidentiary rulings, alleged misstatements of the law, alleged trial court bias, or alleged ineffective assistance of defense counsel. The trial court did not err by refusing to permit appellant to introduce evidence of a letter to prove lower value of the burned building, damage to the building by burglars, or threats made against appellant.

Affirmed.